Twaya Vienna McINTOSH, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Respondent.

No. CX–91–261.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Granted Oct. 16, 1991.

Thomas F. Van Horn, St. Paul, for appellant.

Bradley T. Cosgriff, Lee L. LaBore & Associates, Hopkins, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and NORTON and SHORT, JJ.

## OPINION

SHORT, Judge.

In a case involving insurance coverage, Twaya McIntosh argues the trial court erred as a matter of law in granting summary judgment for State Farm Mutual Automobile Insurance Company because (1) innocent persons should be compensated for all injuries arising out of the use of an uninsured's automobile, and (2) an "accident" is not a prerequisite to the payment of no-fault benefits. We disagree and affirm.

## FACTS

The parties have stipulated to the facts. On the morning of October 1, 1987, McIntosh's former boyfriend sat in his car outside her house. When McIntosh, her minor son, and a male companion emerged from the house, they immediately got into McIntosh's car. The former boyfriend ap-

proached the car on foot and confronted McIntosh regarding some household furniture. Because the former boyfriend had a gun in his coat, McIntosh drove away. The former boyfriend got back in his own car, and began chasing McIntosh's car. The former boyfriend unsuccessfully attempted to ram McIntosh's car with his car and fired several shots at her with a .38 caliber revolver. As the two cars sped down the highway, the former boyfriend pulled up along the side of McIntosh's car and fired a shot that injured her. The former boyfriend was convicted of first degree attempted murder and first degree assault against McIntosh, and second degree assault against McIntosh's male companion.

While State Farm insured McIntosh on the date of the incident for both uninsured motorist (UM) and no-fault benefits, the insurance company denied coverage because the injuries McIntosh suffered were caused by the intentional acts of her former boyfriend. McIntosh commenced this declaratory judgment action against State Farm. The trial court granted summary judgment for the insurance company, concluding the insurance policy did not afford either UM or no-fault coverage because the incident was not an "accident" within either the policy or the Minnesota No–Fault Automobile Insurance Act.

## ISSUES

I. Is the intentional assault by McIntosh's former boyfriend covered by her uninsured motorist policy?

II. Is the intentional assault by McIntosh's former boyfriend an "accident" for purposes of no-fault benefits?

## ANALYSIS

On appeal from a grant of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The parties have stipulated to the facts and agree the incident involved the use of an uninsured automobile. *See Continental W. Ins. Co.*

*v. Klug,* 415 N.W.2d 876, 878–79 (Minn. 1987). In addition, McIntosh does not deny her injuries were caused by an intentional act of her former boyfriend. *See Woida v. North Star Mut. Ins. Co.,* 306 N.W.2d 570, 573 (Minn.1981). The issues on appeal are whether this assault is covered under the parties' insurance policy or under the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (1990). Because interpretation of an insurance contract and a statute involves questions of law, a trial court may properly decide those issues on a motion for summary judgment. Our review on appeal is de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985); *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978).

## I.

The relevant part of McIntosh's uninsured motorist policy states:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle or underinsured motor vehicle.

McIntosh argues the trial court erred in granting summary judgment for State Farm because innocent persons who suffer injuries due to the intentional conduct of uninsured motorists should always be compensated. We disagree. Every insured under the uninsured motorist statute is entitled to only such coverage as would be available if the tortfeasor had complied with the minimum requirements of financial responsibility law. *See* 8C J. Appleman, Insurance Law and Practice, §§ 5067.65 5086 (1981). Uninsured motorist coverage was enacted as a complement to liability coverage, *see* 12A G. Couch, Couch on Insurance 2d § 45:624 (rev. ed. 1981), and was never intended to provide benefits where traditional liability insurance would not respond. *See* 8C J. Appleman, Insurance Law and Practice §§ 5086,

5092.55 (1981). Our inquiry thus is: If the former boyfriend had motor vehicle insurance as required by law, would his insurance policy respond? The answer is "no" because a person cannot insure himself from having to bear the consequences of his own intentional acts. *See* Minn.Stat. § 65B.60 (1990). McIntosh does not deny her former boyfriend's actions were intentional. Had the former boyfriend carried insurance as required by law, the intentional acts exclusion in his policy would have precluded coverage.

Our analysis furthers the purpose of uninsured coverage. McIntosh argues the purpose of an intentional acts exclusion in a liability policy is not furthered by denying first-party UM coverage to an innocent insured. We disagree. As we have held in two separate cases, "viewing intentional acts from the perspective of the insured under UM coverage would essentially render [the intentional acts] exclusion nugatory." *Petersen v. Croft,* 447 N.W.2d 903, 905–06 (Minn.App.1989) (since all occurrences are unintended from insured's perspective, relying on that perspective would "eliminate insurers' ability to exclude intentional acts under UM coverage"), *pet. for rev. denied* (Minn. Jan. 12, 1990); *Wilson v. State Farm Mut. Auto. Ins. Co.,* 451 N.W.2d 216, 218–19 (Minn.App.1990) (since no accident is intended from victim's perspective, using that perspective would nullify intentional acts exclusion), *pet. for rev. denied* (Minn. Mar. 22, 1990). We are mindful that many jurisdictions hold a contrary view.[1] These other courts view an incident from the victim's standpoint and conclude the injuries are unforeseen, unintended, unexpected and therefore "accidental." *Country Cos. v. Bourbon,* 122 Ill. App.3d 1061, 1067, 78 Ill.Dec. 407, 411, 462

N.E.2d 526, 530 (1984). We decline to follow this analysis because uninsured motorist coverage was never intended to provide benefits where traditional liability insurance would not respond. *See* 8C J. Appleman, Insurance Law and Practice § 5092.-55, at 394–97 (1981). None of these contrary opinions explains why uninsured benefits should cover more than would be covered if the uninsured party had been properly insured.

Thus, the assault by McIntosh's former boyfriend is not covered by uninsured motorist insurance because, had he carried insurance as required by law, his policy would not provide coverage. Nor do we believe there was an "accident" for purposes of UM coverage for the reasons set forth below.

## II.

The second issue before us is whether McIntosh may recover no-fault benefits. McIntosh's policy states:

> We will pay in accordance with the No-Fault Act for bodily injury to an insured, caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle.

The Minnesota No–Fault Act also requires an "accident" as a prerequisite to receiving benefits. *See* Minn.Stat. § 65B.46, subd. 1 (1990); *see also Edwards v. State Farm Mut. Auto. Ins. Co.,* 399 N.W.2d 95, 99 (Minn.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987).

McIntosh argues she should recover no-fault benefits notwithstanding the fact the tortfeasor intentionally shot her. *See Meric v. Mid–Century Ins. Co.,* 343 N.W.2d 688, 690 (Minn.App.1984) (recovery of no-

---

1. *See, e.g., Alabama Farm Bureau Mut. Casualty Ins. Co. v. Mitchell,* 373 So.2d 1129, 1136 (Ala. Civ.App.1979); *American Protection Ins. Co. v. Parker,* 150 Ga.App. 732, 733, 258 S.E.2d 540, 542 (1979); *Davis v. State Farm Mut. Auto. Ins. Co.,* 264 Or. 547, 550, 507 P.2d 9, 10 (1973); *Dyer v. American Family Ins. Co.,* 159 Ill.App.3d 766, 773–74, 111 Ill.Dec. 530, 537–38, 512 N.E.2d 1071, 1075 (1987), *app. denied,* 117 Ill.2d 542, 115 Ill.Dec. 399, 517 N.E.2d 1085 (1987); *Hartford Accident & Indem. Co. v. Wolbarst,* 95 N.H. 40, 43, 57 A.2d 151, 153–54 (1948); *Keeler v.* *Farmers & Merchants Ins. Co.,* 724 S.W.2d 307, 309–10 (Mo.Ct.App.1987); *Kish v. Central Nat'l Ins. Group of Omaha,* 67 Ohio St.2d 41, 48–49, 424 N.E.2d 288, 293 (1981); *Leatherby Ins. Co. v. Willoughby,* 315 So.2d 553, 554–55 (Fla.Dist.Ct. App.1975); *Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 291, 134 S.E.2d 654, 658 (1964); *Redden v. Doe,* 357 So.2d 632, 634 (La.Ct.App. 1978); *Wheeler v. O'Connell,* 297 Mass. 549, 553–54, 9 N.E.2d 544, 546–47 (1937). *See also* 1 M. Steenson, Minnesota No–Fault Automobile Insurance, 30–31 (2d ed. 1989).

fault benefits by widow of driver who was shot and killed by robber attempting to commandeer driver's car for use in getaway). We disagree. *Meric* found the injury arose out of the "use" of the automobile, *see id.* at 690, an issue to which the parties here have stipulated. *Meric* did not address whether there was an "accident" within the meaning of the policy. Whether there is an "accident" is an issue which the Supreme Court has expressly recognized is unresolved by a finding of "maintenance or use." *Klug*, 415 N.W.2d at 879.

The "accident" requirement is another link in the causal chain between the use of a vehicle and the injury. *See* 8D J. Appleman, Insurance Law and Practice § 5171 (1981). The alleged accident in this case is the act of shooting McIntosh and our inquiry must be whether that act is causally related to the "use" of McIntosh's automobile. While McIntosh was engaged in the use of a vehicle when she was injured, that use was incidental to the injury. McIntosh's former boyfriend intended to inflict bodily harm on her whether she was or was not using a motor vehicle. *Cf., Meric*, 343 N.W.2d at 690 (assault would not have happened had the victim been on foot). Under these circumstances, we conclude that the act of shooting McIntosh was not causally connected with her use of a motor vehicle. Thus, the shooting of McIntosh was not an "accident" within the meaning of the statute or her insurance policy.

## DECISION

Coverage does not lie for uninsured motorist benefits where coverage would not lie had the tortfeasor carried insurance. The trial court correctly concluded an "accident" is necessary before motor vehicle benefits will be available. Because there is insufficient causal connection between the act giving rise to the injury and the use of a motor vehicle, there is no "accident." Thus, the trial court properly granted summary judgment to State Farm.

Affirmed.

CRIPPEN, Judge (concurring specially).

I concur in the decision to affirm the trial court, but with additional observations.

1. Twice this court has said that existence of an accident must be determined from the view of the tortfeasor. *Petersen v. Croft*, 447 N.W.2d 903 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 12, 1990); *Wilson v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.2d 216 (Minn.App.1990), *pet. for rev. denied* (Minn. March 22, 1990). Although the Minnesota Supreme Court declined to review each of these decisions, appellant asks that another panel of judges of this court depart from the prior holdings. Pending any additional occasion of the supreme court to review this issue, I would reject appellant's plea solely for the sake of consistent insurance practices.

2. *Petersen* and *Wilson* addressed uninsured motorist coverage, and we must decide whether the rationale of those decisions also governs appellant's claim for no-fault benefits. Under the insurance contract here, I find no reasonable basis for analyzing the accident issue differently for uninsured motorist and no-fault claims. This view is explained by examining the insurance contract between the parties.

Respondent extended coverage to appellant for injuries chargeable to the owner or driver of an uninsured motor vehicle and "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." The policy also provided no-fault benefits for injury "caused by accident resulting from the maintenance or use of a motor vehicle." Because of the similar language in both coverage sections, a genuine effort to interpret contract language must treat both coverage topics alike in addressing the accident and use issues. Although the two coverage provisions involve different public policy issues, both contain nearly identical contract language on the topics of "accident" and "maintenance or use" of a vehicle. While the uninsured motorist provision indicates that only the tortfeasor's vehicle be considered, the no-fault coverage provision suggests that the insured's vehicle use be considered. This distinction is irrelevant here

since both the insured and the tortfeasor were driving cars when the insured was injured.

3. Although we choose not to contradict *Petersen* and *Wilson*, I do not defend those decisions. There is merit, I believe, in criticism already directed at them. *See Wilson*, 451 N.W.2d at 220 (Huspeni, J., dissenting). Also, in my opinion, the accident doctrine announced in *Petersen* and *Wilson* may be an anomaly given the supreme court's analysis of use and maintenance in *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.1987). This conclusion requires a few additional comments on the *Klug* rationale.

It is undisputed here that (1) for purposes of uninsured motorist coverage, appellant's injuries resulted from operation, maintenance or use of a motor vehicle by Robert Taylor, and (2) for purposes of no-fault coverage, her injuries arose out of maintenance or use of a motor vehicle. The parties and the court agree that the maintenance and use topic is governed by *Klug*.

The injury suffered by appellant clearly involved automobiles. An examination of the tortfeasor's state of mind, however defended, leads us back to issues already resolved in *Klug*. A study of the tortfeasor's intentions, however otherwise explained, is nothing more than a study of causation. Under this analysis, the intentions of the tortfeasor suggest only that his use of an automobile was incidental to the harm done, or that appellant's injuries were not causally connected with Taylor's use of a motor vehicle. Yet, in *Klug's* language, as a matter of law the tortfeasor's "actions of driving and shooting were inextricably linked." *Id.* at 878. The supreme court held this was so even though it was stipulated that the assaulting driver's conduct was "the result of" his mental illness. *Id.* at 877.

Normally speaking, of course, injuries could involve use or maintenance of a motor vehicle but still be caused by some circumstances other than an ordinary motor vehicle accident. It is important to observe, however, that the issue of causation is already determined by deciding that motor vehicle use or maintenance is included under policy provisions on that subject. Under the policy here, uninsured motorist coverage relates to an accident "arising out of" use and maintenance. No-fault coverage relates to injuries from an accident "resulting from" use or maintenance. It was this causative condition that was treated expansively in *Klug*. In *Klug* causation was found adequate in circumstances not unlike those in the case now being reviewed. We should not employ a construction of accident language to contradict the causation analysis resolved in *Klug*.

It has been repeatedly observed, of course, that the *Klug* court did not have an accident issue before it and remanded for further proceedings on that question. While this might imply that the intentional act considered in that case could have been an accident, a narrow view of accident language seems wholly at odds with the rationale of *Klug* on causation. *See Wilson*, 451 N.W.2d at 221, n. 1 (Huspeni, J., dissenting). Consistent with the logic and importance of *Klug*, I can find no reason to examine the tortfeasor's state of mind to determine if an accident occurred here.

Our prior decisions on the accident issue appear to be premised on an effort to give the contract reference to an accident some meaning. *See Petersen*, 447 N.W.2d at 905–6. This concern easily misleads us. First, although we cannot envision a nonaccident viewed from the injured person's perspective, the accident language may have been thoughtlessly employed by insurers with no different perspective in mind. Intentional act exclusions have been employed historically to deal with misconduct of persons purchasing insurance. Also, as observed before, an accident doctrine which requires exploring causation conflicts with the *Klug* construction of other contract language, the use and maintenance clauses.

4. In my opinion, the decisions in *Petersen* and *Wilson* cannot be defended on grounds not stated by the panels deciding those cases. More specifically, I do not agree that there is merit in a separate legal

232

rationale for denying uninsured motorist coverage based on speculation about definitions or exclusions that may have governed coverage for the tortfeasor if he had been insured.

First, it must be remembered that the contract language here requires a similar accident analysis for uninsured motorist and no-fault benefits. Theorizing on the nature of uninsured motorist coverage risks an unwarranted distinction between accidents under one coverage and the other.

More important, uninsured motorist coverage is a contract to pay damages for bodily injury an insured "is legally entitled to collect" from the uninsured driver. This coverage addresses all of the uninsured driver's liabilities, not those the driver might be able to insure or those covered by some hypothetical policy the driver could have purchased. This coverage is also consistent with Minnesota's No–Fault Automobile Insurance Act, which defines uninsured motorist coverage as a policy to protect insureds "who are legally entitled to recover damages" from owners or operators of uninsured vehicles. Minn.Stat. § 65B.43, subd. 18 (1990). Theoretical considerations about coverage cannot supplant contract and statutory language that govern the issue.

NORTON, Judge (concurring in part and dissenting in part).

I agree with the majority in regard to the application of the *Petersen* and *Wilson* cases to the uninsured motorist coverage issue.

However, I respectfully dissent from the majority with regard to the application of these cases to the no-fault coverage issue. This is a matter of first impression in Minnesota and we should not assume to apply the same reasoning to this issue without clear guidance from our supreme court.