**Twaya Vienna McINTOSH,
Petitioner, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Respondent.**

No. CX–91–261.

Supreme Court of Minnesota.

Aug. 28, 1992.

Thomas F. Van Horn, St. Paul, for appellant.

Bradley T. Cosgriff, Hopkins, for respondent.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, Minneapolis, for amicus curiae, MN Trial Lawyers Ass'n.

SIMONETT, Justice.

May an intentional assault qualify as an "accident" for purposes of either no-fault or uninsured motorist coverage or both?

On October 1, 1987, Robert Taylor parked his uninsured car near the home of his former girlfriend, Twaya McIntosh. When McIntosh came out of the house, she got into her own car, a Dodge automobile,

accompanied by a male companion and her 6–month–old son (whose father is Taylor). Taylor walked over to the Dodge and confronted McIntosh about a bedroom set purchased when the two were still living together. Taylor asked McIntosh to go back into the house with him, and opened his coat to reveal a .38 caliber revolver.

Rather than returning to the house with Taylor, McIntosh drove away and a car chase ensued. Taylor tried (unsuccessfully) to ram the Dodge from the rear and the side, and, as the two cars proceeded on the city streets, he fired four shots at the McIntosh automobile. The chase continued onto the freeway, where Taylor fired yet another shot at the rear of McIntosh's car. He then pulled alongside the passenger side of the Dodge and fired a shot that shattered the window glass, missing the male passenger (who ducked), but striking McIntosh in the head. Taylor was convicted of first degree attempted murder and first degree assault of McIntosh.

McIntosh carried insurance for her car with defendant State Farm Mutual Automobile Insurance Company. When State Farm refused to pay no-fault and uninsured motorist benefits, McIntosh brought this declaratory judgment action in district court. The trial court granted State Farm's motion for summary judgment, concluding that McIntosh was not injured in an accident. The court of appeals affirmed. *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 474 N.W.2d 227 (Minn.App. 1991). We granted McIntosh's petition for further review.

Plaintiff McIntosh does not deny, nor could she, that she was injured because of an intentional assault by her former boyfriend. She contends, however, that the shooting, from her perspective, was an "accident." State Farm does not claim, on the facts here stipulated, that the incident, from McIntosh's perspective, was not an accident. The dispositive issue in this appeal, then, might be put: For the purposes of uninsured motorist and no-fault coverages, is an intentional assault to be viewed from the perspective of the person assaulted or of the assailant?

I.

Under its uninsured motorist coverage, State Farm agrees to pay damages an insured is legally entitled to collect from the driver of the uninsured vehicle. The policy states, though, that: "The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle * * *."

To better understand the case now before us, it is helpful to review our decision in *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.1987), a case with remarkably similar facts. Klug was driving on a highway at 55 m.p.h., when an uninsured car (driven by a man Klug knew from work) pulled alongside. The fellow worker fired a shotgun at Klug, hitting him in the elbow. A second shot missed. Then Klug's car was rammed from the rear. Finally, Klug escaped at an exit ramp.

We held in *Klug* that Klug's shotgun injury arose out of the use of an uninsured motor vehicle because, as an integral part of the assault, the uninsured vehicle was used to convey and maneuver its driver so that he could shoot another driver. We then remanded the case to the court of appeals to consider whether the incident was an "accident," the parties having stipulated that the uninsured motorist was mentally ill, *id.* at 879; the issue, however, was never decided, as the parties settled the case before the court of appeals could consider it.

Shortly thereafter, though, two additional cases involving the "accident" issue came before the court of appeals. First came *Petersen v. Croft*, 447 N.W.2d 903 (Minn.App.1989), *rev. denied* (Minn., Jan. 12, 1990), followed by *Wilson v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.2d 216 (Minn.App.1990), *rev. denied* (Minn., Mar. 22, 1990).

In *Petersen,* a group of young men, riding around in an uninsured car, drove by the Petersen home in the early morning hours and fired four rifle shots at the house. Randi Petersen, who was sleeping on the front porch, was killed. The appeals panel held that the assault should be

viewed from the standpoint of the tort-feasor, and from that perspective the shooting plainly was not an accident. "We cannot envision," said the appeals court, "a situation in which an occurrence would not be unintended from the perspective of the insured." 447 N.W.2d at 905. In *Wilson,* the husband intentionally killed his wife by running her down with his Cadillac while she was on foot. A divided panel held (1) that the fatal injuries arose out of the use of a motor vehicle (indeed, the car was used as a weapon to strike and kill the wife), but (2) that, following *Petersen,* the fatal assault should be viewed from the husband's perspective, and from that perspective the fatal injuries to the wife were not accidental. 451 N.W.2d at 218–19.

This brings us to *McIntosh,* where the trial court and the court of appeals again followed *Petersen.* We granted further review to resolve the question of whose perspective defines "accident." Our court of appeals has taken a minority position, as most jurisdictions have chosen to view an incident involving a motor vehicle from the victim's perspective. *See McIntosh,* 474 N.W.2d at 229, and n. 1.

While the victim's injury must be caused by an "accident," neither our No–Fault Act nor the insurer's policy defines the term. The word, however, has a generally understood meaning. As any dictionary says, an accident is simply a happening that is unexpected and unintended. *See also Weis v. State Farm Mut. Auto. Ins. Co.,* 242 Minn. 141, 144, 64 N.W.2d 366, 368 (1954) ("an unexpected happening without intention or design"). The problem is not with what the term means, but to whom the meaning applies.

Those jurisdictions that find coverage for intentional assaults take the view that the injured insured has, indeed, experienced an unexpected happening and that the character of the assailant's conduct is irrelevant. Under this reasoning, though, as *Petersen* points out, it is difficult to conceive of any incident (aside from when the victim is the assailant) that is not an accident. The term "accident" must have been inserted in the coverage clause for a reason; and the fact no allowance is made under uninsured motorist or no-fault coverage for an intentional act exclusion arguably suggests that the word "accident" is intended to create such an exclusion. The fact remains, however, that the statutes governing these coverages do not distinguish between negligent and intentional acts, and plaintiff contends that courts should not impose this distinction.

The major premise for the argument in favor of viewing an assault from the victim's perspective is that uninsured motorist and no-fault coverages are "first party coverages." The insured buys this coverage, much like health or disability insurance, to protect herself against motor vehicle injuries. In this context, it should not matter whether the injuries were inflicted intentionally or negligently, because the economic consequences for the victim are identical in either case. 1 Steenson, *Minnesota No–Fault Automobile Insurance* at 30 (2d ed. 1989). The insured has paid the same premium in either instance, and, so it is argued, it would be incongruous to deny benefits simply because the injuries were intentionally inflicted. *See, e.g., Keeler v. Farmers and Merchants Ins. Co.,* 724 S.W.2d 307, 309–10 (Mo.App.1987); *Leatherby Ins. Co. v. Willoughby,* 315 So.2d 553, 555 (Fla.App.1975). Plaintiff also argues that one of the No–Fault Act's primary goals is to "relieve the severe economic distress of uncompensated victims of automobile accidents," Minn.Stat. § 65B.42 (1990). The question remains, however, whether the coverages involved are, in fact, first party coverages.

Arguably, uninsured motorist coverage is not first party coverage, in which case the arguments based on the first party nature of the coverage apply only to basic economic loss benefits. Appleman points out that it is not accurate to suggest that uninsured motorist coverage resembles an accident rather than a liability policy; that the coverage "more closely resembles what most courts have stated it to be, namely, a substitute liability policy which stands as proxy for that which the uninsured motorist chose not to carry." 8C Appleman,

*Insurance Law & Practice* § 5067.45, pp. 49–50 (1981).

Interestingly, the Uniform Motor Vehicle Accident Reparations Act (UMVARA) does not define the word "accident." In the committee comment to section 2 of the Act it is said the word is used as "a generic term applied to the incident which immediately gives rise to liability." 14 U.L.A. 41, 53 (1972). In other words, the term "accident" takes its meaning from the context in which it is used. Thus, for payment of "basic reparation benefits" (*i.e.*, for no-fault benefits), the committee comment says the term "accident" should be considered "[f]rom the point of view of the victim who did not intentionally injure himself," but when used in the context of security for tort liability an "accident" should be considered "from the point of view of the person causing the harm." *Id.* It is significant, we think, that uninsured motorist coverage more closely corresponds to security for tort liability than it does to basic reparation benefits. We might add that, in a comment to section 1 of the Act, the committee intimates that coverage for basic reparations benefits is to be kept within reasonable bounds through the "use" clause, observing "it is arguable that courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term [*i.e.*, 'use'] would be more consistent with the policy of this Act." *Id.* at 47.

We must take a closer look, therefore, at the nature of the coverages involved here. This requires us to consider separately uninsured motorist coverage and no-fault benefits coverage under our statutes.

## II.

■ Uninsured motorist coverage is purchased to protect against the risk that the motorist who injures the purchaser is uninsured (or underinsured) and unable to pay the damages the purchaser is entitled to recover under tort law. The victim, in other words, collects under her own policy the compensation that the liability carrier would have paid if the uninsured motorist

had been insured. *See State Farm Mut. Auto. Ins. Co. v. Galloway*, 373 N.W.2d 301, 306 (Minn.1985); Appleman, *supra.*

Thus, the focus under uninsured motorist coverage is on the conduct of the uninsured motorist. Indeed, we do not think those who pay premiums into a pool for uninsured motorist coverage reasonably expect those funds to be available to pay compensation for injuries for which, if the uninsured motorist were insured, his insurance company would not have to pay. Under true first party coverage, the insured would not be denied recovery if contributorily negligent, and yet under uninsured motorist coverage, the victim's recovery is reduced or even completely denied for the victim's contributory negligence. Uninsured motorist coverage is not no-fault coverage; fault on the part of the uninsured motorist must be proven under tort law. In other words, under uninsured motorist coverage, the distinction between *coverage* and *liability under that coverage* is radically different than it is under first party coverage.

■ In our view, uninsured motorist coverage is not true first party coverage. We agree, therefore, with the court of appeals in *Petersen* and *Wilson* and hold that "accident," under uninsured motorist coverage, is to be viewed from the perspective of the tortfeasor. This approach best fits the nature of the coverage. We affirm the court of appeals decision denying uninsured motorist benefits to plaintiff McIntosh.

## III.

■ This brings us to no-fault benefits coverage. No-fault benefits are paid "for bodily injury to an insured, caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle * * *." Coverage is not limited to damage caused by an uninsured or underinsured motor vehicle, nor is it limited to a tortfeasor's vehicle. Coverage applies, too, if the insured is injured while operating her own automobile in a single car incident. The insured's contributory negligence is irrelevant, recovery being disallowed only for

the victim's intentional self-inflicted injuries. Minn.Stat. § 65B.60 (1990).

Insurance for economic loss benefits is purchased to protect the insured against risk of injury arising from the maintenance or use of a motor vehicle regardless of whether the tortfeasor was negligent or acted intentionally, or even if there were no tortfeasor. It is enough if the victim accidentally injures herself. In other words, the focus is not on the tortfeasor; rather, no-fault benefit eligibility is dependent exclusively on the injured victim and whether she has been hurt under circumstances arising from the use of a motor vehicle. This is true first party coverage.

■ Consequently, we conclude that for the purpose of no-fault benefits coverage the term "accident" is to be understood from the perspective of the injured victim. We reverse the contrary ruling of the court of appeals with respect to no-fault benefits coverage, and hold that McIntosh's no-fault coverage does extend to her injuries. To be eligible for no-fault benefits McIntosh must also, of course, meet the use requirement established in *Klug* by proving that her injury resulted from an accident arising out of the use of a motor vehicle.

To summarize, an "accident" is viewed from the perspective of the tortfeasor for uninsured-underinsured motorist coverage, but from the victim's perspective for the purpose of economic loss benefits coverage. This simply reflects the truism that while words have a life of their own, they take on the coloration of their habitat. The approach we adopt here is consistent with the use of the term "accident" in the Uniform Act, and it is consistent with the principles underlying first party coverage.

Affirmed in part and reversed in part.

YETKA, Justice (concurring in part and dissenting in part).

I agree with the majority's holding that McIntosh may recover under the no-fault portion of her automobile policy. However, I cannot agree with the majority's analysis and result which bars recovery under the uninsured liability portion of her policy. The majority opinion improperly changes the focus for recovery of first-party insurance benefits by attempting to define "accident" depending on the type of coverage sought. This distinction is without merit, and I would permit the plaintiff to recover under both the uninsured liability and the no-fault portions of her policy. The majority's distinction needlessly and unfairly confounds an already complicated area of insurance law.

In *Klug*, on facts almost identical to those in this case, we held that the injury arose out of the use and maintenance of a motor vehicle. We have crossed that bridge and do not need to address the issue further. Indeed, the majority recognizes that *Klug* disposes of the "use and maintenance" issue in this case. In *Klug*'s wake, the only issue remaining is whether the injury was caused by an "accident" under the statute and the policy so that it is covered under the insured's no-fault and uninsured motorist liability protection.

The majority begins by distinguishing between liability and no-fault coverage for purposes of defining "accident." I agree that the insured here "collects under her own policy the compensation that the liability carrier would have paid if the uninsured motorist had been insured." Majority Op. at 479. However, I think it is disingenuous to claim that, in defining the word "accident" for uninsured motorist coverage, the focus must "be on the conduct of the uninsured motorist." *Id.* In my view, the conduct of the uninsured motorist is wholly irrelevant to the determination of an insured's coverage for first-party benefits bought and paid for by the insured. The majority's holding will create a whole host of unforeseen difficulties by basing coverage on the state of mind of the uninsured motorist.

In focusing on the uninsured motorist's conduct, the majority ignores its holding, required by *Klug*, that the incident here involved the "use and maintenance" of a motor vehicle. Under the majority's analysis, any time an uninsured motorist acts intentionally to cause harm, the insured is barred from recovery of first-party bene-

fits. Thus, in this case, if Taylor had intentionally driven his automobile into McIntosh's or had forced her or a third party's automobile off the road, neither the third party nor McIntosh could recover under the uninsured liability portion of their automobile policies because, from Taylor's perspective, there was no "accident." Under the majority's analysis, I have difficulty conceptualizing any incident which, from the intentional tortfeasor's perspective, will be an "accident" for purposes of uninsured motorist liability coverage. This stroke is much too broad; it blindly eliminates recovery based on the uninsured motorist's conduct regardless of the role an automobile plays in the insured's injury.

The majority notes that uninsured motorist coverage is not no-fault coverage. While this is true, it does not follow that an insured is *completely barred* from recovery simply because contributory or comparative negligence may reduce an insured's recovery. This analysis punishes and blames the victim/insured for what, to her, are accidental injuries. The insured's injuries and expenses arising from them are no less compensable because they are intentionally caused. In fact, comparative-negligence principles are not even applicable in the intentional-tort setting.

Moreover, the purchase of uninsured coverage is an independent act; the coverage attaches to any injury that is caused by an uninsured motorist and arises out of the use and maintenance of a motor vehicle. The insured legitimately expects this coverage whether the injuries are intentionally or negligently caused. I see no great underwriting risk as a result of cases like the present one unless we become a lawless country. Certainly occurrences like the present case are rare. This is precisely the sort of situation that uninsured and no-fault coverage is intended to serve. *See Dyer v. American Family Ins. Co.*, 159 Ill.App.3d 766, 111 Ill.Dec. 530, 512 N.E.2d 1071, 1074 (1987) (uninsured motorist coverage "designed for the protection of in-

jured persons, not for the benefit of insurance companies or motorists who cause damage to others").

In addition, I note that a majority of states agree with this analysis.[1] For example, one court noted:

> To look through the eyes of the uninsured rather than the insured in [an intentional assault] situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
>
> All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. * * *

*Celina Mut. Ins. Co. v. Saylor*, 35 Ohio Misc. 81, 301 N.E.2d 721, 723 (1973); *see also Cannon v. Commerce Ins. Co.*, 18 Mass.App. 984, 470 N.E.2d 805, 806 (1984) (compulsory uninsured motorist coverage designed to protect injured party, not willful operator); *Keeler v. Farmers & Merchants Ins. Co.*, 724 S.W.2d 307, 310 (Mo. App.1987) ("accident" determined from insured's perspective); *Stucky v. Long*, 783 P.2d 500, 503 (Okla.App.1989) (intentional acts of an uninsured tortfeasor may be considered an accident for purposes of uninsured motorists protection when viewed from the perspective of the injured person). Another commentator noted:

> While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person's standpoint the damages are just as accidental as if he had been negligently struck. Therefore, there is almost no reason (with the possible exception of the determination of the premium rates, which should be of minimal importance in light of the incidence of such intentional assaults with an automobile) to consider the accident from any viewpoint but that of the injured person, except in the event the claimant provoked the assault.

---

1. In fact, except for *Motor Vehicle Accident Indemnification Corporation v. McCarthy*, 16 A.D.2d 35, 224 N.Y.S.2d 909 (N.Y.App.1962), nearly all the cases I have found from other jurisdictions hold that, with respect to the "accident" issue, the victim's perspective is controlling. The cases are not as uniform on the "use and maintenance" issue.

**482**

A. Widiss, *A Guide to Uninsured Motorist Coverage*, § 2.47 at p. 95 (1969).

Thus, I agree with the amicus in this case and would hold that, in this type of situation, uninsured motorist coverage must focus on the injured party, not on the tortfeasor's state of mind. It is the injured party who paid a premium for protection against injuries caused by uninsured motorists. Intentional acts are excluded from liability policies so that an insured cannot perform a deliberate act and expect protection from suits by third parties. There is simply no danger of this kind of manipulation when it is the injured party who has purchased the insurance coverage. Thus, the public policy precluding liability coverage to persons who intentionally cause harm does not apply in this type of suit.

For all of these reasons, I would reverse the court of appeals and allow recovery under both the liability and no-fault portions of the policy.

WAHL, Justice (concurring & dissenting).

I join Justice Yetka's concurrence and dissent.

GARDEBRING, Justice (concurring & dissenting).

I join with Justice Yetka's partial concurrence and partial dissent.