**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Plaintiff,**

v.

**Edmond and Barbara BLYSTRA, individually and as guardian of Kevin Blystra, a minor, Defendants/Third–Party Plaintiffs,**

v.

**FARMERS INSURANCE CO. OF ARIZONA, Third–Party Defendant.**

Civ. No. 94–1030 JP/WWD.

United States District Court, D. New Mexico.

April 7, 1995.

Rudolph A. Lucero, Terri L. Sauer, Miller, Stratvert, Torgerson & Schlenker, Albuquerque, NM, for plaintiff.

Stephen F. Lawless, Thomas L. Grisham, Grisham & Lawless, Albuquerque, NM, for defendant.

James E. Lieuwen, Pelton & O'Brien, Albuquerque, NM, for third-party defendant.

### *MEMORANDUM OPINION AND ORDER*

PARKER, District Judge.

The subjects of this Memorandum Opinion and Order are defendants'/third-party plaintiffs' ("Blystras'") October 6, 1994 motion for summary judgment and plaintiff State Farm Automobile Insurance Company's ("State

Farm's") October 24, 1994 cross-motion for summary judgment, and third-party defendant Farmers Insurance Company's ("Farmers'") January 27, 1995 motion for summary judgment and the Blystras' February 10, 1995 cross-motion for summary judgment. After careful consideration of the pleadings, attached documentation, law and facts, I find State Farm's motion for summary judgment and Farmers' motion for summary judgment should be granted. The Blystras' motions for summary judgment should be denied.[1]

On the morning of May 18, 1993, young Kevin Blystra was walking along the 1200 block of Easterday Road in Albuquerque. Either the driver or the passenger of a white Chevrolet truck shot Kevin Blystra in his leg with a pellet gun as the truck drove by. Neither the driver nor the owner of this truck has been identified. The Blystras have incurred substantial medical costs as a result of the shooting.

At the time of the shooting, the Blystras possessed two State Farm policies and three Farmers policies. These policies provided uninsured motorists coverage and medical payments coverage. No party disputes Kevin Blystra's status as an insured under these policies. The State Farm policies' uninsured motorists coverage states:

> We will pay all damages for bodily injury or property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the ownership, maintenance or use of an uninsured motor vehicle.

"Uninsured motor vehicle" includes "a 'hit-and-run' motor vehicle whose owner or driver remains unknown and which was the proximate cause of bodily injury to an insured...." The Farmers uninsured motorists coverage is substantially similar, in that the insured's bodily injury must be "caused by accident" and "arise out of the ownership, maintenance or use of the uninsured motor vehicle." The Farmers policy defines "unin-

sured motor vehicle" in part as "a hit-and-run vehicle whose operator or owner has not been identified and which strikes ... you or any family member."

Both the State Farm and the Farmers policies also provided medical payments coverage, under the terms of which the insurer promised to pay reasonable medical expenses for bodily injury caused by accident. The State Farm medical payments coverage required that the injury occur either while the insured operated or occupied a covered vehicle or "through being struck as a pedestrian by a motor vehicle or trailer." Similarly, the term "insured person" is defined in the Farmers medical payments provisions as "you or any family member while occupying, or through being struck by, a motor vehicle...." As with the uninsured motorists coverages, the Farmers and the State Farm medical payments coverages required the occurrence of an accident.

Plaintiff State Farm brought this declaratory judgment action against the Blystras seeking a determination that it is not liable under its insurance contracts for Kevin Blystra's injuries. The Blystras filed a third-party complaint against Farmers on November 4, 1994 after Farmers denied coverage. The coverage issues are now ripe for summary adjudication.

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to " 'secure the just, speedy, and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). A motion for summary judgment may be granted only when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538

---

1. This case was originally assigned to the Honorable Juan G. Burciaga, Senior Judge. Judge Burciaga died on March 5, 1995. Subsequently, this case was transferred to me. The analysis contained in this opinion is essentially that of Judge Burciaga, who had considered the motions and the issues. I concur with Judge Burciaga's analysis in all respects.

(1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 887 (10th Cir.1979), the burden on the moving party may be discharged by demonstrating the absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In such a situation, the moving party is entitled to judgment as a matter of law "because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322, 106 S.Ct. at 2552.

■ A federal court sitting in diversity must apply the law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Particularly, the federal court should look to the state supreme court's most recent statement of applicable law, *Southwest Forest Industries, Inc. v. Sutton,* 868 F.2d 352, 354 (10th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 496 (1990), and if unavailing, to any state intermediate court's pronouncements. *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1543 (10th Cir.1992). In predicting how the New Mexico Supreme Court would rule in this case, I am guided by "policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies." *Weiss v. United States,* 787 F.2d 518, 525 (10th Cir.1986) (citation omitted). I may also take into consideration decisions from other jurisdictions and "the general weight and trend of authority." *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988).

In order for the Blystras to recover uninsured motorists benefits and medical payments, they must demonstrate that Kevin Blystra's injuries were the result of an accident or "caused by accident" as the policies specify. The term "accident" is defined as "an unexpected happening without intention or design which produces injury or damage." 12 George J. Couch et al., Couch on Insurance 2d § 45:34, at 266 (1981) (citations omitted). It should be self-evident that the plain meaning of the term "accident" does not encompass a criminal assault.

■ Insurance is fundamentally a matter of contract law. *Stewart v. State Farm Mut. Auto. Ins. Co.,* 104 N.M. 744, 748, 726 P.2d 1374, 1378 (1986). "An insurance contract should be construed as a 'complete and harmonious instrument designed to accomplish a reasonable end.'" *Knowles v. United Servs. Auto. Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) (quoting *Safeco Ins. Co. of Am. v. McKenna,* 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977)). The language the parties employed in their agreement "must be given its natural and ordinary meaning." *Gamboa v. Allstate Ins. Co.,* 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986) (quoting *Sears v. Wilson,* 10 Kan.App.2d 494, 704 P.2d 389, 390 (1985)). Although ambiguities in a policy must be liberally construed in favor of the insured, *Thompson v. Occidental Life Ins. Co.,* 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct.App.), *cert. denied,* 91 N.M. 4, 569 P.2d 414 (1977), a clause is ambiguous only if it is "reasonably and fairly susceptible of different constructions." *Knowles,* 113 N.M. at 705, 832 P.2d at 396 (quoting *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987)). "The courts should not resort to a strained construction of the policy for purposes of creating an ambiguity when no ambiguity in fact exists." *Gamboa,* 104 N.M. at 759, 726 P.2d at 1389 (citation omitted).

■ The phrase "caused by accident" is not ambiguous. Kevin Blystra was not a victim of an accident. He was the victim of a drive-by shooting, an intentional, deliberate, and criminal act. Nevertheless, the Blystras cite to decisions from other jurisdictions which state that the question of whether an occurrence was an "accident" must be analyzed from the perspective of the insured victim; and these courts hold that, from the insured's perspective, an assault is an accident. *See, e.g., Davis v. State Farm Mut. Auto. Ins. Co.,* 264 Or. 547, 507 P.2d 9, 10 (1973):

> Whether the occurrence is accidental depends entirely upon the point from which the question is viewed. If the occurrence is looked at from the point of view of the person who inflicts the harm ..., it is

intentional. If the occurrence is looked at from the victim's standpoint, it is unforeseen, unintended, unexpected, and has every aspect of an accident as long as the occurrence was not provoked.

*See also Nationwide Mut. Ins. Co. v. Knight,* 34 N.C.App. 96, 237 S.E.2d 341, 343 (1977) ("[F]rom the point of view of the victim of an unexpected and unprovoked assault ..., his damages are just as accidental as if he had been negligently struck while crossing the street." (citation omitted)), *rev. denied,* 293 N.C. 589, 239 S.E.2d 263 (1977). This reasoning is, apparently, the majority view. *See Willard v. Kelley,* 803 P.2d 1124, 1128–29 and n. 7–8 (Okla.1990) (citing cases); *State Farm Mut. Auto. Ins. Co. v. McMillan,* No. 93–1721, 1994 WL 484963, at *5, —— P.2d ——, —— (Col.Ct.App. Sept. 8, 1994) (citing cases). However, Minnesota, New Jersey, New York, and Washington courts have held to the contrary. *See Lindstrom v. Hanover Ins. Co.,* 138 N.J. 242, 649 A.2d 1272, 1275 (1994) (for purposes of uninsured motorists coverage, the tortfeasor's perspective controls); *McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 478 (Minn.1992) (same); *Roller v. Stonewall Ins. Co.,* 115 Wash.2d 679, 801 P.2d 207, 209–10 (1990) ("[A]n intentional act cannot, by definition, be an accident."); *McCarthy v. Motor Vehicle Accident Indem. Corp.,* 16 A.D.2d 35, 224 N.Y.S.2d 909, 915 (1962), *aff'd,* 12 N.Y.2d 922, 238 N.Y.S.2d 101, 188 N.E.2d 405 (1963). New Mexico courts have not addressed the issue of whose perspective governs or whether the term "accident" includes an assault in the uninsured motorists context.

New Mexico caselaw does, however, require terms of insurance agreements to "be construed to effect the intent of the parties." *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885, 888 (10th Cir.1980) (citing *Cain v. National Old Line Ins. Co.,* 85 N.M. 697, 516 P.2d 668 (1973)). *See also Stewart v. State Farm Mut. Auto. Ins. Co.,* 104 N.M. 744, 748, 726 P.2d 1374, 1378 (1986) ("[T]he rights and duties of the parties [to an insurance contract] are to be determined by its terms." (quoting *Thompson v. Occidental Life Ins. Co.,* 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct.App.1977)). Adopting the perspective of the insured in order to ascertain whether an occurrence is an accident violates this fundamental principle. "Under this reasoning, ... it is difficult to conceive of any incident (aside from when the victim is the assailant) that is not an accident. The term 'accident' must have been inserted in the coverage clause for a reason...." *McIntosh,* 488 N.W.2d at 478. Nothing in the language of State Farm's or Farmers' insurance contracts suggests that any one person's "perspective" governs. An occurrence is either accidental or not accidental.

[T]he term must be given its popular and ordinary meaning.... [A] loss is "accidental" when it happens without design, intent, or obvious motivation.... On the basis of this common sense definition, ... an intentional act can never be an "accident." Furthermore, pursuant to the common sense definition, "accident" is not a subjective term. Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not.

*Roller,* 801 P.2d at 210 (citations and quotations omitted).

In any event, an assault is not an accidental occurrence, even from the insured's perspective. An assault may be "unforeseen, unintended, and unexpected" to the insured, *Davis,* 507 P.2d at 10, but it still not an accident in the commonly understood meaning of the term. When Kevin Blystra relates what happened to him on the day of the shooting, he does not describe the event as an accident.

Essentially, two rationales are offered in support of the view that an assault is an accident, both of which are unpersuasive. First, some courts have reasoned that because the victim, and not the tortfeasor, is the insured party with respect to uninsured motorists coverage, the public policy of not insuring against intentional criminal acts is not implicated. As the third-party tortfeasor's insurance liability is not at issue, "the social policy of preventing an insured from profiting from his own wrongs (attendant to liability insurance) is not applicable." *Redden v. Doe,* 357 So.2d 632, 633–34 (La.App. 1978). *See also McMillan,* 1994 WL 484963

at *5, —— P.2d at —— ("[T]he justifications for not indemnifying the insured who intentionally commits a tortious act relate to deterrence and punishment: considerations that do not apply to the payment of first party, uninsured motorist insurance claims." (citation omitted)). But this reasoning fails to justify a strained interpretation of the term "caused by accident." With respect to third-party coverage, an intentional act is not an accident because (1) the term is not so defined; and (2) wrongdoers should not have the consequences of their intentional acts muted by insurance. The fact of first-party uninsured motorists coverage serves to remove the second impediment to insuring against intentional acts, but it does not eliminate the first. The parties must still be held to their contract, the terms of which must be construed to comport with their "natural and ordinary meaning." *Gamboa*, 104 N.M. at 758, 726 P.2d at 1388.

The second rationale is based on legislative policies embodied in uninsured motorists statutes. Most if not all states mandate some form of uninsured motorists coverage. The New Mexico uninsured motorists provision is found at N.M.Stat.Ann. § 66–5–301 (Michie 1994) ("No motor vehicle or automobile liability policy ... shall be delivered or issued for delivery in New Mexico ... unless coverage is provided ... for bodily injury or death and for injury to or destruction of property ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles...."). Courts adopting the perspective of the insured in interpreting "accident" premise their position on the observation that the purpose of uninsured motorists coverage "is to protect innocent victims who have been injured by financially irresponsible motorists." *Davis*, 507 P.2d at 11. Therefore, the argument goes, the insured should recover as long as the insured did not intentionally cause or contribute to his or her own injuries. "The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable

twisting of the obvious purpose of purchasing insurance coverage." *Celina Mut. Ins. Co. v. Saylor*, 35 Ohio Misc. 81, 301 N.E.2d 721, 723 (1973).

Although "it is important to protect the public from 'irresponsible or impecunious drivers,' uninsured motorist coverage is 'not intended to provide coverage in every uncompensated situation.'" *State Farm Auto. Ins. Co. v. Ovitz*, 117 N.M. 547, 550, 873 P.2d 979, 982 (1994) (quoting *Kurent v. Farmers Ins.*, 62 Ohio St.3d 242, 581 N.E.2d 533, 536 (1991)). Nothing in the text or history of the uninsured motorists statute suggests that the New Mexico Legislature sought to mandate the purchase of general crime insurance.

In fact, interpreting the term "accident" to encompass assaults places insured parties in a position superior to that which the legislature envisioned. Uninsured motorists coverage is the reciprocal or mutual equivalent of coverage the New Mexico Financial Responsibility Act generally requires every driver in the state to carry. N.M.Stat.Ann. §§ 66–5–201 to 66–5–239 (Michie 1994). As the New Mexico Supreme Court has explained on numerous occasions, the purpose of uninsured motorists coverage is to "put an injured motorist in the same position with regard to damages that he would have been in had the tortfeasor possessed liability insurance." *Richards v. Mountain States Mut. Cas. Co.*, 104 N.M. 47, 49, 716 P.2d 238, 240 (1986) (citing *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975)). *See also Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 170, 646 P.2d 1230, 1234 (1982) ("The desired result is that an injured insured receive the same compensation when injured by an uninsured motorist as he would receive if the other motorist had carried the minimum amount of liability insurance provided by the statute."). If Kevin Blystra's attacker was identifiable and carried insurance, Kevin Blystra would nevertheless have no recourse under the attacker's liability insurance because public policy forbids insuring against intentional acts. Anonymously, those courts which interpret the term "accident" to include an intentional assault permit insureds to recover uninsured motorists benefits in situations where, if the

tortfeasor had possessed liability insurance, the tortfeasor's carrier would have been required by law to refuse coverage. The New Mexico Legislature did not intend first-party uninsured motorists coverage to provide greater protection than the third-party liability coverage it was designed to replace. "[W]e do not think those who pay premiums into a pool for uninsured motorist coverage reasonably expect those funds to be available to pay compensation for injuries which, if the uninsured motorist was insured, his insurance company would not have to pay." *McIntosh*, 488 N.W.2d at 479.

In conclusion, neither the uninsured motorists nor the medical payments provisions of the State Farm or Farmers policies cover Kevin Blystra's injuries which resulted from a drive-by shooting. Kevin Blystra was the victim of a crime, not an accident. A drive-by shooting was not a risk the parties reasonably contemplated as insurable. To rule otherwise would expand coverage beyond the parties' reasonable expectations. Although this ruling predicts that the New Mexico Supreme Court would align itself with what may be a minority view, I believe the Supreme Court would prefer to adhere to well-established principles of contractual interpretation, comply with the legislative intent behind enactment of the New Mexico uninsured motorists statute, and adopt the better reasoning of the Minnesota, New Jersey, New York, and Washington courts.

IT IS THEREFORE ORDERED that:

(1) plaintiff State Farm's motion for summary judgment is GRANTED;

(2) third-party defendant Farmers' motion for summary judgment is GRANTED and defendants/third-party plaintiffs Blystras' third-party complaint is hereby dismissed with prejudice; and

(3) defendants/third-party plaintiffs Blystras' motions for summary judgment are DENIED.