**AUTO–OWNERS INSURANCE COMPANY, Respondent,**

v.

**Thomas M. SMITH, Appellant (C4–85–778), Respondent (C6–85–586),**

**Clarence Dupey as Trustee for the Heirs and Next-of-Kin of Marian Dupey, Decedent, Respondent (C4–85–778), Appellant (C6–85–586).**

**Nos. C6–85–586, C4–85–778.**

Court of Appeals of Minnesota.

Nov. 12, 1985.

Review Denied Jan. 17, 1986.

James A. Reding, Richard S. Stempel, St. Paul, for Auto-Owners Ins. Co.

James R. Peterson, Minneapolis, for Thomas M. Smith.

Richard A. Grayson, St. Paul, for Clarence Dupey as Trustee for the Heirs and Next-of-Kin of Marian Dupey, decedent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

Thomas Smith and Clarence Dupey appeal from the trial court's judgment granting Auto-Owners Insurance Company's motion for summary judgment. We affirm.

## FACTS

Thomas Smith worked as a bartender in St. Paul. On December 12, 1982, Smith worked from noon until 5:00 p.m. After his shift ended at 5:00 p.m., Smith remained at the bar to drink and watch television.

Although the bar closed at midnight, Smith did not leave until approximately 1:45 a.m. He left with Brenda Barr, a co-employee who told Smith of problems she was having with a Wade Dupey. Barr stated that Dupey continued to harass her, and had even tried to run her off the road. Smith told Barr that he would "take care of it."

Barr then drove Smith past the Dupey home where Smith observed Dupey's car parked directly in front of the house and a light on upstairs. Smith fired four shots at the lower level of the house from his .38 caliber colt, which he had taken to work. One of the shots struck and killed Marion Dupey, Wade's mother, who was sleeping on a couch in the living room.

Smith did not learn of Marion Dupey's death until the next day while he was working. According to Smith, both he and Barr were shocked to learn of her death. Smith claims that his only intent was to scare Wade Dupey so that Dupey would quit bothering Barr. Smith claims that he purposely fired at the darkened lower level of the house in order to avoid the lighted area upstairs and the possibility of injuring someone. Smith further claims that he thought the bullets would not pass through the wall of the house. Smith admits, how-

ever, that he should have known of the danger.

Clarence Dupey, as trustee for Marion Dupey's next-of-kin, brought a wrongful death action against Smith. Auto-Owners, the carrier for Smith's homeowner's and automobile insurance policies, brought a declaratory judgment action seeking to have a determination of its duties to defend and indemnify Smith.

The trial court concluded as a matter of law that Smith intended to inflict injury, and found that:

> [T]he acts of defendant Smith are such that an intention to inflict and injure must be inferred as a matter of law. It is uncontroverted that he intentionally fired four shots from a .38 pistol into a dwelling which he knew to be occupied. The facts compel the conclusion that Smith fired the shots with knowledge and expectation that someone might be injured or killed in the process.

The trial court, therefore, found that Smith's acts were intentional, and released Auto-Owners from liability under the "expected or intentional act" exclusion of the insurance policy. Accordingly, the trial court granted Auto-Owner's motion for summary judgment.

### ISSUE

Whether intent to inflict injury may be inferred as a matter of law from Smith's act of shooting bullets into a house so as to release Auto-Owners from liability under an "expected or intentional act" exclusion of the insurance policy.

### ANALYSIS

#### I.

■ Summary judgment is proper when: the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The Minnesota Supreme Court has stated that "[a] material

fact is one of such a nature as will affect the result or outcome of a case depending upon its resolution." *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974). Accordingly, if an intent to injure may be inferred from the nature and character of Smith's act, there would be no material fact issue and Auto-Owners would be entitled to summary judgment, for an intent to injure excludes an insured assailant from coverage. The coverage alleged here is under two different policies, one, an automobile policy, the other, a homeowner's policy.

#### II.

##### A. Automobile Policy

■ Smith's car was not involved in any way with the shooting incident and, therefore, the injury was not causally related to the operation of the car for transportation purposes nor was it an active accessory to the injury received. *See Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977). As to the automobile policy, summary judgment was proper.

##### B. Homeowner's Policy

■ The homeowner's policy contained the following exclusion:

> Under personal liability coverage and medical payments to others we do not cover:
>
> 1. bodily injury or property damage *expected or intended by an insured person.*

The parties acknowledge that to exclude liability coverage the "intent" of an insured must be to cause bodily injury. *See Caspersen v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973). The intent may be established by actual proof of an intent to injure or by showing that the character or nature of the act is such that intent can be inferred as a matter of law. *See Woida v. North Star Mutual Insurance Co.*, 306 N.W.2d 570, 573 (Minn.1981) (en banc) (citations omitted); *Caspersen v. Webber*, 298 Minn. 93, 99, 213 N.W.2d 327, 330 (1973).

Smith and Dupey argue on appeal that summary judgment was inappropriate for two reasons. First, Smith did not possess the requisite intent to inflict bodily injury and because material facts are in dispute. Second, this fact situation is not of the type in which the inference of intent to injure as a matter of law should be raised.

### 1. Proof of Actual Intent

Smith and Dupey argue that a dispute exists as to whether Smith possessed an actual intent to inflict injury.

Although Smith admits that he should have known of the danger of firing shots into a residence, there is nothing of a *factual* nature in the record to support the contention that Smith intended to inflict bodily injury or that he had a plan to injure. The Minnesota Supreme Court has stated that "[w]hen the act itself is intended but the resulting injury is not, the insurance exclusion has no application." *Caspersen v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973) (citation omitted). An "expected or intentional act" under an insurance contract cannot be defined in terms of foreseeability from the standpoint of the insured. *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 176, 244 N.W.2d 121, 125 (1976). Smith intended to scare Wade Dupey. In doing so, there is no evidence he intended to injure a particular individual.

### 2. Inference of Intent to Injure as a Matter of Law

Auto-Owners, however, argues that the very character of Smith's acts mandates the finding of an intent to injure. In support of this contention, Auto-Owners points to Smith's prior conduct, including his statement that he would take care of Wade Dupey, his trip to the Dupey house to look for Dupey's car, his observation of a light in the upstairs of the Dupey house, and the firing of four shots from his pistol into the downstairs to scare Dupey. Therefore, Auto-Owners argues, Smith's subjective intent is irrelevant.

A leading Minnesota case on inferred intent to injure is *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976). In *Toal*, an innocent third party was killed when two insureds and their accomplices committed an armed robbery. *Id.* at 171, 244 N.W.2d at 122. Although one of the insureds knew that at least four of the participants were armed, he claimed that he never thought that anyone would be shot. *Id.* at 171, 244 N.W.2d at 123. The other insured conceded that before the robbery he was afraid that someone might get hurt or killed. *Id.* at 171–172, 244 N.W.2d at 123. Both insureds only intended to threaten people, and neither intended to shoot anyone during the actual robbery. *Id.* at 171, 244 N.W.2d at 123.

The Minnesota Supreme Court inferred as a matter of law the insureds' intent to inflict injury on the basis that the insureds committed the robbery knowing that someone might be hurt or killed. *Id.* at 177–178, 244 N.W.2d at 126. The court described the insureds' acts as calculated and remorseless, and held that intent to injure should be inferred because the insureds intentionally prepared themselves to inflict serious injury by carrying loaded guns. *Id. See also Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978) (intent to injure inferred as a matter of law when insured wrapped his belt buckle around his hand and struck the plaintiff).

Similarly, the Minnesota Supreme Court denied coverage under an "expected or intentional act" exclusionary clause in *Woida v. North Star Mutual Insurance Co.*, 306 N.W.2d 570 (Minn.1981) (en banc). In *Woida*, the insured and several friends drove to a powerline construction site to harass the guards. *Id.* at 572. Some members of the group shot at a truck in which several guards were sitting, and one guard was injured. *Id.* The court inferred an intent to injure, and stated as follows:

> In this case, as in *Toal*, intent to cause bodily injury can be inferred as a matter of law. The facts indicate that participants made plans at the Fischers' resi-

dence to drive to the Villard construction site and shoot at the truck in which the guards were sitting. They armed themselves with high-powered rifles which had been loaded with armor-piercing bullets. The men knew that the guards' truck was occupied at the time the shots were fired, since the dome light and headlights of the truck had gone on. Yet, they proceeded to fire through the windshield of the vehicle knowing that someone could be seriously injured. We find that these actions are of such a calculated nature that we can infer an intention to inflict injury as a matter of law.

*Id.* at 573–74. The court concluded that because intent was inferred, the insurance carrier owed no duty to indemnify the plaintiff. *Id.* at 574.

The critical facts in *Woida* were that (1) plans were made to drive to the construction site and fire shots at an occupied vehicle; (2) the insureds armed themselves with loaded rifles; (3) they knew the vehicle was occupied because an interior light was on; and (4) they proceeded with their plan to shoot at the vehicle, knowing that someone might be seriously injured. The facts in this case are so similar that *Woida* dictates the same result.

We find that Smith's conduct reaches the level of conduct which the Minnesota Supreme Court characterized in *Toal* and *Woida* as so remorseless as to require an inference of intent to inflict bodily injury. Smith intentionally fired four bullets into a house he knew to be occupied, the danger of which Smith admits he should have realized. Smith's actions were of such a calculated nature that the trial court properly inferred intent to injure as a matter of law. Auto-Owners was entitled to summary judgment.

### DECISION

The record is devoid of any evidence that Smith had actual intent to inflict injury. Shooting into a house known to be occupied by people, however, is an egregious act,

and intent to injure may be inferred as a matter of law.

Affirmed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge, dissenting:

I respectfully dissent. This court should reverse the trial judge's conclusion that Smith intended to cause bodily injury as a matter of law.

The two cases cited by the majority opinion as controlling are both I believe distinguishable on their facts. In *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976), the two insureds and their accomplices entered a 24 hour bowling alley with loaded weapons. Although the participants did not specifically intend to shoot anyone during the robbery, they did intend to threaten people they knew would be inside the alley and use the weapons if it became necessary to accomplish their planned robbery. *Id.* 309 Minn. at 171, 244 N.W.2d at 123.

In *Woida v. North Star Mutual Insurance Co.*, 306 N.W.2d 570 (Minn.1981) (en banc) plans were made by the insured and several friends to drive to a powerline construction site to harass the guards. Upon their arrival they fired several shots at a vehicle they knew was occupied because an interior dome light exposed the men inside. *Id.* at 573.

To infer an "intention to inflict an injury as a matter of law" both the *Toal* and *Woida* courts required the acts of the insureds to be calculated and unremorseful in their character. *Toal*, 309 Minn. at 177–178, 244 N.W.2d at 126; *Woida*, 306 N.W.2d at 573–574. Here although Smith's conduct may be characterized as grossly negligent, it does not reach that level of conduct which could be characterized as calculated and unremorseful so as to require an inference of intent to inflict bodily injury. Unlike the participants in *Toal* and *Woida* Smith had neither a plan to injure nor did he aim at that part of the Dupey home he knew to be occupied by people.