447 N.W.2d 903 (1989)
Glen O. PETERSEN, Trustee for the heirs and next-of-kin of Randi L. Petersen, deceased; and Glen Petersen, individually and as parent and natural guardian of John Petersen and Scott Petersen, minors, Respondent,
v.
James CROFT, et al., Defendants.
Appeal of SENTRY INSURANCE.
James E. MADDEN, d/b/a Earle Brown Bowl, Third-Party Plaintiff,
v.
Ronald BACK, Third-Party Defendant.
No. C3-89-926.
Court of Appeals of Minnesota.
November 21, 1989.
Review Denied January 12, 1990.
*904 John Buchman, Soucie & Buchman, Ltd., Anoka, for respondent.
John H. Guthmann, Hansen, Dordell, Bradt, Odlaug & Bradt, Saint Paul, for appellant.
Heard, considered and decided by SCHUMACHER, P.J., and FORSBERG and GARDEBRING, JJ.

OPINION
FORSBERG, Judge.
Sentry Insurance Company appeals from a judgment declaring respondent Glen O. Petersen entitled to uninsured motorist (UM) coverage. Petersen's claim arises out of the drive-by shooting death of his wife, Randi L. Petersen. We reverse.

FACTS
The facts are stipulated and have been previously tried in a criminal action.
In the early morning hours of July 16, 1982, James Croft, Ronald Back, and M.S. (a minor) consumed a large quantity of drugs and alcohol. While intoxicated, they drove around Brooklyn Center and Brooklyn Park in an uninsured car owned by Back.
Back supplied Croft with a .44 Magnum rifle. Croft fired the gun from the car window at several locations in the area. When Croft ran out of ammunition, they returned to Back's apartment for more.
At the urging of M.S., Back drove to the home of Glen and Randi Petersen. As they approached, the house was dark and there were no signs of activity within. While they slowly drove by, Croft fired four rounds into the house. One of the shots struck and killed Randi Petersen, who was asleep on the porch.
Back, Croft, and M.S. were arrested a few days later. At the criminal trial, the defendants testified they did not know of Randi Petersen's presence on the porch. They were aware the Petersens owned the house and it was not vacant. They did not intend to shoot at or injure Randi Petersen or any other individual.
Back and Croft were convicted of felony murder under Minn.Stat. § 609.19(2) (Supp. 1981). M.S. was convicted of aiding and abetting criminal damage to property and unintentional second degree murder.
Glen Petersen thereafter sought UM benefits under automobile liability insurance policies issued him by Sentry and by American Family Insurance. Randi Petersen was a named insured under both policies. Sentry denied coverage, claiming the shooting did not arise out of the use and maintenance of a motor vehicle, and coverage was avoided under an intentional acts exclusion. Petersen then brought this declaratory action against Sentry. American Family, while not a party, has agreed to be bound by the result of this suit.
The district court found the shooting arose out of the maintenance or use of a motor vehicle. Because the court failed to reach the issue of whether the shooting resulted from an intentional act, Sentry moved for amended findings and conclusions. In its amended order, the court held that while Croft had intentionally fired the rifle into the Petersen home, the intentional discharge had unintentionally killed Randi Petersen. The act was therefore not excluded *905 under the intentional acts provision and the court found the shooting to be a covered occurrence. This appeal followed.

ISSUES
1. For purposes of UM coverage, should an intentional act be viewed from the perspective of the insured or the tortfeasor?
2. Did the actions leading to the death of Randi Petersen constitute acts covered by the intentional acts exclusionary clause in the Petersens' automobile liability insurance policy?

ANALYSIS
The policy issued by Sentry to the Petersens provides in relevant part:
UNINSURED MOTORISTS COVERAGE
[Sentry] will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the use of the uninsured motor vehicle.
Sentry appeals both the use and maintenance and the intentional acts findings of the district court. Because we find sufficient grounds for exclusion under the intentional acts clause, we do not determine the existence of other grounds for exclusion. Wieneke v. Home Mutual Insurance Co., 397 N.W.2d 597, 600 (Minn.Ct.App.1986), pet. for rev. denied (Minn. Jan. 21, 1987).

I.
To decide whether the district court correctly determined the shooting was an accident for purposes of UM coverage, we must first determine whether the act is considered from the perspective of the insured victim or the uninsured driver. This question has not yet been resolved in this jurisdiction. Id. at 602 (Popovich, C.J., concurring).
Respondents urge, and the trial court held, the issue of intent is properly viewed from the perspective of the insured in the UM context. They argue the policy considerations allowing intentional acts exclusions are not applicable in the first party, UM coverage situation. Normally, the exclusion is applied to prevent wrongdoers from controlling the risks of their policies. The exclusion holds them responsible for the consequences of their own wrongful acts. These policy considerations, however, are not readily applicable to UM coverage where the insured is not the wrongdoer. See Sciascia v. American Insurance Co., 183 N.J.Super. 352, 355, 443 A.2d 1118, 1120 (1982).
However, considering the occurrence from the insured's perspective is at cross purposes with an intentional acts exclusion. Insurers undertake to cover only occurrences arising out of the negligence of parties in automobile liability situations. This entails not allowing any party to consciously control risks and be afforded indemnification for intentional acts. As the supreme court has stated:
[T]he purpose of our [UM] statute is to provide the insured with financial protection against uninsured motorists whose negligence results in personal injury to him.
Nygaard v. State Farm Mutual Automobile Insurance Co., 301 Minn. 10, 19, 221 N.W.2d 151, 156 (1974) (emphasis added).
We believe the intentional nature of an act should be determined from the perspective of the tortfeasor in the UM context. The supreme court has pointed out the problems of holding otherwise in Red & White Airway Cab v. Transit Casualty Co., 305 Minn. 353, 357, 234 N.W.2d 580, 582 (1975). In Red & White, the court noted that viewing an occurrence from the perspective of the insured victim can lead to anomalous results. Specifically, the court refused to follow the extreme case of Haser v. Maryland Casualty Co., 78 N.D. 893, 53 N.W.2d 508 (1952), where a rape was found to be "caused by accident" for purposes of UM coverage.
We cannot envision a situation in which an occurrence would not be unintended from the perspective of the insured. Therefore, viewing intentional acts from the perspective of the insured under UM coverage would essentially render that exclusion *906 nugatory. We refuse to reach a decision so broad as to altogether eliminate insurers' ability to exclude intentional acts under UM coverage. See Mixed Local of Hotel & Restaurant Employees Union Local No. 458 v. Hotel and Restaurant Employees International Alliance and Bartenders International League of America, 212 Minn. 587, 595-96, 4 N.W.2d 771, 776 (1942) (contract construction should avoid nullification of writing in whole or in part).

II.
Having decided the occurrence is to be viewed from the perspective of the tortfeasor, it is still necessary to determine whether it was an "accident" within the meaning of the policy. "Accident" is defined in the policy as "[a]n unexpected and unintended event that causes bodily injury or property damage * * *." The district court in this case found:
23. On July 17, 1982, James Croft intentionally discharged a .44 magnum rifle into the residence of Glen and Randi Petersen.
24. The intentional discharge of the .44 magnum rifle by James Croft unexpectedly and unintentionally caused bodily injuries to Randi Petersen which resulted in her death.
Based on these findings, the court concluded:
4. The bodily injuries which resulted in the death of Randi Petersen were caused by a "car accident" for purposes of uninsured motorist coverage as that term is set forth in the insurance policies issued by Sentry Insurance Company and American Family Insurance Company.
In Auto-Owners Insurance Co. v. Smith, 376 N.W.2d 506 (Minn.Ct.App.1985), pet. for rev. denied (Minn. Jan. 17, 1986), this court adopted a four-part test to determine whether an act is intentional, based upon Woida v. North Star Mutual Insurance Co., 306 N.W.2d 570 (Minn.1981). In order for this act to be intentional as a matter of law, the tortfeasors must have shown some planning activity, must have armed themselves with a dangerous weapon, must have known the house was occupied, and must have committed the act with the knowledge someone could be injured. See Smith, 376 N.W.2d at 510.
First, as to planning activity, the tortfeasors drove through the area, randomly firing a gun. However, it is undisputed the tortfeasors drove to the Petersen home at the urging of M.S. They went there specifically because the Petersens lived there. In addition, prior to going to the Petersens' home, Croft stopped at Back's apartment to obtain additional ammunition. These deliberate actions sufficiently demonstrate defendants' planning activity.
Second, we consider whether the tortfeasors armed themselves with a dangerous weapon. The facts are undisputed on this point.
Third, we examine whether the tortfeasors knew the home was occupied. The testimony indicated all lights were out in the house. Although there was no sign of activity, Croft knew the house was not vacant. In fact, Croft fired the shots at the urging of M.S. precisely because the Petersens lived there.
Finally, we must determine whether the shooting was done with the knowledge that someone might be seriously injured. On this subject, the supreme court has held:
The intent may be established by proof of an actual intent to injure or when a character of an act is such that an intention to inflict injury can be inferred as a matter of law.
Woida, 306 N.W.2d at 573 (citations omitted).
In Smith, 376 N.W.2d at 510, this court inferred intent as a matter of law under circumstances very similar to the present case. There, the assailant fired four shots into a darkened home, striking and killing a woman sleeping on the couch. Here, the acts of M.S., Croft, and Back similarly allow no inference other than intent to injure. See also Iowa Kemper Insurance Co. v. Stone, 269 N.W.2d 885, 887 (Minn.1978); *907 Continental Western Insurance Co. v. Toal, 309 Minn. 169, 177-78, 244 N.W.2d 121, 125-26 (1976).
As all four prongs of the Smith test are met, the shooting of Randi Petersen was an intentional act as a matter of law and the occurrence was not an "accident" under the terms of Sentry's policy.

DECISION
The district court is reversed. Judgment must be entered for Sentry.
Reversed.