**Warren DONOVAN, Appellant,**

v.

**COMMERCIAL UNION INSURANCE CO., Respondent.**

**No. CX–92–1257.**

Court of Appeals of Minnesota.

Dec. 15, 1992.

Stephen R. O'Brien, Minneapolis, for appellant.

Dan T. Ryerson, Gislason, Martin & Varpness, Edina, for respondent.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant Warren Donovan commenced this declaratory judgment action seeking a determination that Commercial Union, which had issued him a homeowner's policy, was obligated to defend and indemnify him in an action brought against him by his former wife. Respondent, asserting appellant's conduct was intentional and excluded under the policy, moved for summary judgment, which the trial court granted. We affirm.

## FACTS

When appellant arrived home from work one afternoon, he began drinking beer. About an hour later his wife, Catherine, also arrived home from work, and the two began drinking together. An argument ensued. They left their home to go to a neighbor's house, but when the argument continued on the sidewalk, appellant went back into the house, leaving Catherine outside.

After re-entering the house, appellant took a loaded .45 caliber pistol from his nightstand and returned to his chair in the living room. He was despondent and contemplated suicide.

A short time later, Catherine re-entered the house to retrieve her purse, her keys and a Visa card. Appellant told her that if

she wanted to leave, she should not return because he believed their marriage was not in good shape and they should consider separating.

Appellant then decided, by taking the pistol in his hand, to frighten Catherine into leaving the house. He intended to make it appear that he was ready to use the gun against her. Appellant took the gun from his lap, cocked it, and aimed at a wall-hanging on the far end of the living room. Catherine was not between the gun and the wall-hanging; she was slightly off to one side. When appellant pulled the trigger, Catherine suddenly moved into the line of fire, and was struck in the elbow.

Appellant stated that his intention in firing the gun was to instill great fear in Catherine. He stated he did not intend to injure her.

Catherine commenced an action against appellant for her personal injuries and appellant sought defense and indemnity from respondent. Respondent, in denying coverage, cited the policy's exclusion for "bodily injury * * * which is expected or intended by the insured." Appellant commenced the present declaratory judgment action, asserting he neither expected nor intended Catherine's injuries. The trial court granted respondent's motion for summary judgment.

## ISSUE

Did the trial court err in determining as a matter of law that appellant intentionally injured Catherine?

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. In reviewing a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

### II. Intentional Injury

The intent to injure under an intentional injury exclusion in a liability insurance policy may be established by proof of an actual intent to injure, or, based upon the character of the act, such an intention may be inferred as a matter of law. *Woida v. North Star Mut. Ins. Co.*, 306 N.W.2d 570, 573 (Minn.1981).

A number of cases involving the intentional injury exclusion have inferred an intent to injure as a matter of law where the conduct at issue was the reckless use of a firearm. *E.g., Woida*, 306 N.W.2d at 573 (insured fired armor piercing bullets at security guards' truck); *Continental W. Ins. Co. v. Toal*, 309 Minn. 169, 177–78, 244 N.W.2d 121, 126 (1976) (armed robbery); *Petersen v. Croft*, 447 N.W.2d 903, 906–07 (Minn.App.1989) (drive-by shooting), *pet. for rev. denied* (Minn. Jan. 12, 1990); *Auto–Owners Ins. Co. v. Smith*, 376 N.W.2d 506, 510 (Minn.App.1985) (shots fired into house), *pet. for rev. denied* (Minn. Jan. 17, 1986).

In *Smith*, the insured deliberately fired at the lower level of a house in an attempt to avoid injury to people he believed were upstairs. The insured also did not believe the bullets would pass through the walls of the house. *Smith*, 376 N.W.2d at 507. The bullets did, in fact, pass through the walls, striking and killing a person sleeping on a couch in the lower level of the house. This court inferred an intent to cause injury as a matter of law. *Id.* at 510.

Appellant asks this court to distinguish the present case from *Smith* and all other prior cases where intent was inferred as a matter of law when the tortfeasor recklessly discharged a firearm. Appellant argues that the prior cases involved calculated, remorseless conduct, whereas the present case involves only negligence. He further contends that if this court found appellant's conduct to be intentional, intent to injure would be inferred any time an intent to cause fear is accompanied by the discharge of a firearm. We disagree. It is possible that no intent to injure would be inferred if, for example, a gun were fired

accidentally. *See Swindal v. Prudential Property & Cas. Ins. Co.*, 599 So.2d 1314, 1318–19 (Fla.Dist.Ct.App.1992) (insured intended to frighten plaintiff with gun; gun discharged when plaintiff tried to grab gun out of insured's hand; court focused on whether discharge was intentional regardless of intent to frighten).[1]

Appellant does not claim that the gun accidentally discharged. It is undisputed that he intentionally fired the gun in an attempt to frighten Catherine into leaving the house. It is appellant's intent to frighten, combined with his use of an inherently dangerous instrumentality, that compels our conclusion that his conduct is excluded from coverage.

Here, as in *Smith*, the insured intended only to frighten his victim. However, in both cases the insured intentionally discharged the gun. *See Smith*, 376 N.W.2d at 510. Where the conduct at issue is the intentional misuse of a firearm, we believe it will be a rare case in which an intent to cause injury will not be inferred. This is not such a rare case. Appellant's intention to injure Catherine must be inferred as a matter of law from his intentional discharge of the gun.

Sound public policy concerns are served by the conclusion that appellant's conduct was "expected or intended" and, thus, beyond the scope of coverage in his homeowner's policy. Reckless or intentional misuse of a handgun creates an inherently dangerous situation. To hold that the exclusionary clause of the policy did not apply to the facts of this case would be, in effect, to extend to the insured a license to permit wanton and malicious acts. *See Woida*, 306 N.W.2d at 573.

### DECISION

An intent to injure must be inferred from the nature of the insured's conduct.

Affirmed.

---

**1.** The court certified the question presented to the Florida Supreme Court. *Swindal,* 599 So.2d at 1319. The matter is pending.