BUCZKOWSKI v ALLSTATE INSURANCE COMPANY

Docket No. 96036. Argued October 4, 1994 (Calendar No. 2). Decided December 30, 1994.

Anthony Buczkowski brought an action in the Wayne Circuit Court against Allstate Insurance Company, seeking a declaration that Allstate had a duty to indemnify its insured under a homeowners policy for injuries sustained by Buczkowski when the insured fired his shotgun with the intent of hitting the plaintiff's truck, but instead hit the plaintiff. The court, Charles Kaufman, J., granted summary disposition for the defendant. The Court of Appeals, WEAVER, P.J., and MARILYN J. KELLY, J. (MICHAEL J. KELLY, J., dissenting), affirmed (Docket No. 117921). On rehearing, the Court, MICHAEL J. KELLY and MARILYN J. KELLY, JJ. (WEAVER, P.J., dissenting), reversed, finding that whether the injury might reasonably have been expected to result from the insured's act, and thus trigger the intentional acts exception of the insurance policy, was a question of fact for the jury. The defendant appeals.

In opinions by Chief Justice CAVANAGH, joined by Justices LEVIN and MALLETT, and by Justice BRICKLEY, joined by Justice LEVIN, the Supreme Court affirmed the decision of the Court of Appeals and remanded the case to the trial court.

Chief Justice CAVANAGH, joined by Justices LEVIN and MALLETT, stated that the shooting of a shotgun in a residential neighborhood in the middle of the night at an unoccupied car, does not necessarily lead, as a matter of law, to a reasonable expectation of bodily injury. What is to be reasonably expected is a question of fact, and, as a disputed question of fact, it was improper for the trial court to grant the defendant's motion for summary judgment under MCR 2.116(C)(10).

Justice BRICKLEY, joined by Justice LEVIN, further stated that the injuries at issue were not expected, and therefore are covered by the policy.

If an act is highly likely to cause personal injury, performing that act usually should result in someone getting hurt. This cannot be said of the insured's actions. Shooting at a car with a shotgun in a residential neighborhood while drunk is both foolish and dangerous, but at least as often as not it probably will result only in a loud noise and some property damage.

Simply because a person's actions are foolhardy, potentially dangerous, or even criminal, does not mean that personal injuries are necessarily an expected result of those actions. While it was foreseeable that someone might get hurt as the result of McKay's actions, it was not a highly likely result, one that reasonably might be expected to ensue most of the time.

Exclusionary policies should be strictly construed in favor of the insured. Because the terms of the policy do not refer to egregious activity, the policy must be interpreted to cover even the most egregious acts if it is not highly likely that those acts would cause injury.

Affirmed.

Justice BOYLE, joined by Justices RILEY and GRIFFIN, stated that as a matter of law, the insured should be excluded from coverage under the policy's intentional acts exception.

No factual dispute remains to be resolved; the task on appeal simply is to apply the law to the facts. The intentional acts exception excluding coverage for any damage that reasonably may be expected to result from an insured's acts requires an objective analysis of expectation. The exclusion does not require inquiry into what the insured expected or anticipated from the act, but what reasonably may be expected from the insured's intentional and criminal activity. It requires a determination whether the insured's actions were sufficient to forewarn a reasonably prudent person that the injuries resulting from them were highly likely to occur. If so, and if the insured's actions were criminal or intentional, coverage is excluded. In order to infer an insured's intent or expectation of injury from intentional acts as a matter of law, it need not be shown that the insured intended or expected the precise injury sustained or was aware of the presence of persons in danger. That some personal injury was highly likely to occur is sufficient. The egregious character of an insured's act may be considered in determining if personal injury reasonably could have been expected.

In this case, the insured's acts were of such a nature as to forewarn a reasonably prudent person that personal injury was highly likely to occur. That there was no expectation that the plaintiff, or any person, was going to be injured is not relevant. The insured's act was the direct cause of the plaintiff's injury. No intervening events, whether foreseeable or not, were necessary to cause the injury. The insured's conduct was egregious, and was an intentional act for which he was criminally liable. As a matter of law, the insured should be excluded from

coverage under the policy's objective, intentional acts exception.

198 Mich App 276; 502 NW2d 343 (1993) affirmed.

*Thomas, Garvey, Garvey & Sciotti* (by *Robert F. Garvey*) and *Jerald R. Lovell* for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Rosalind Rochkind* and *James C. Rabaut*), for the defendant.

Amicus Curiae:

*Bendure & Thomas* (by *Mark R. Bendure*) for the Michigan Trial Lawyers Association.

CAVANAGH, C.J. The facts of this case are set forth *post* at 678-681 in the opinion of Justice BOYLE.

I agree with much of the reasoning of Justice BRICKLEY's opinion, but I write separately to distinguish this case from my dissenting opinion in *Frankenmuth Mutual Ins Co v Piccard,* 440 Mich 539; 489 NW2d 422 (1992). I dissented in *Piccard* because I believed there was no "occurrence," as that term was contractually defined, thus there was no coverage to begin with. In this case, however, Allstate does not contest the fact of coverage.* Therefore, the issue I addressed in *Piccard* is not presented here.

Turning to the matter at hand, I agree that shooting a shotgun in a residential neighborhood in the middle of the night at an unoccupied car

* The policy involved here does not even use the "occurrence" language as a trigger for coverage. It provides:

"We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy." [*Post* at 682, n 9.]

does not necessarily lead, as a matter of law, to a reasonable expectation of bodily injury. What is to be reasonably expected is a question of fact, and, as a disputed question of fact, it was improper for the trial court to grant the defendant's motion for summary disposition brought pursuant to MCR 2.116(C)(10). I agree with the reasoning of the Court of Appeals:

> [D]efendant was not intentionally aiming a gun at a person. Instead, he was intentionally firing at an unoccupied parked automobile. We conclude that reasonable minds might differ concerning whether injury might reasonably have been expected to result from Walter McKay's criminal or intentional act. [198 Mich App 276, 280-281; 502 NW2d 343 (1993).]

Accordingly, I would affirm the decision of the Court of Appeals and remand this case to the trial court.

LEVIN and MALLETT, JJ., concurred with CAVANAGH, C.J.

BRICKLEY, J. Applying our analysis from *Allstate Ins Co v Freeman,* 432 Mich 656, 662; 443 NW2d 734 (1989), Justice BOYLE concludes that shooting a shotgun at the back of a car is so likely to cause personal injury that such a result may reasonably have been expected. Accordingly, she would hold that the insured's actions in this case are not covered under his homeowners insurance policy. I believe that the injuries at issue here were not "expected" as that word was defined in *Freeman.*

This Court first examined the type of exclusionary clause at issue here in *Freeman.* The clause reads,

> We do not cover any bodily injury or property

damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person. [*Id.* at 685.]

We found that because the clause contains the language, "may reasonably be expected," it should be evaluated using an objective standard. *Freeman, supra* at 688. We then attempted to define more precisely what kinds of injuries were objectively expected, and therefore excluded from coverage under the clause.

To that end, the word "expected" was defined to encompass situations in which the actor knew or should have known that there was a substantial probability that certain consequences would result from his actions. *Freeman, supra* at 675. Moreover, we stressed that to be expected, it is not enough that a result is reasonably foreseeable.

"The difference between 'reasonably foreseeable' and 'substantial probability' is the degree of expectability. A result is reasonably foreseeable if there are indications which would lead a reasonably prudent man to know that the particular results could follow from his acts. Substantial probability is more than this. The indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur." [*Freeman, supra* at 675, quoting *City of Carter Lake v Aetna Casualty & Surety Co,* 604 F2d 1052, 1059, n 4 (CA 8, 1979).]

Justice BOYLE argues that under this standard the injuries to Buczkowski may reasonably have been expected by McKay as a matter of law.

Common sense, however, indicates otherwise. If an act is highly likely to cause personal injury,

performing that act usually should result in some-
body getting hurt. This is what the words "highly
likely" mean, and what it means when we say that
the injury is expected to result from the act. This
cannot be said of McKay's actions in this instance,
however. McKay used a shotgun to shoot at the
back of a car from inside another car on a residen-
tial street at night. A person could easily use up a
lot of bullets shooting at cars in residential neigh-
borhoods and not hit anyone. It is not as if Mr.
McKay were shooting into a crowd; most of the
places a bullet can go in a residential area simply
do not result in personal injury.

*Frankenmuth Mutual Ins Co v Piccard,* 440
Mich 539; 489 NW2d 422 (1992), is instructional on
this point. In *Piccard,* the insured intentionally set
fire to his store. A fireman was injured when he
fell off a roof while fighting the fire. Using a
policy-blended subjective test, the plurality in *Pic-
card* found that the insured could not be presumed
to have expected the injury to the fireman.* *Id.* at
553.

Justice BOYLE here distinguishes *Piccard,* argu-
ing that the key to that case was that the injury
could not be presumed to be a "direct result" of
the insured's intentional act. *Post* at ˙692-693. I
agree that this was an important factor in the
analysis in *Piccard.* The determinative issue in
that case, however, was whether the injury was
expected. The fact that the injury might not have
been a direct result of the insured's actions only

---

* Three justices signed the plurality opinion in *Piccard.* Justice
LEVIN concurred in the result only. *Piccard, supra* at 554. A policy-
blended subjective standard is, of course, different than the objective
standard at issue in this case. Because it is analyzed from a subjective
point of view, a policy-blended subjective standard of expectation will
exclude fewer injuries from coverage than an objective standard.
Nevertheless, like Justice BOYLE, I find this case to be instructive with
regard to the meaning of the word, "expected." See *post* at 688.

contributed to the examination of this issue. *Id.* at 552-553.

A person who sets fire to a building should know that firemen will eventually show up to put out the fire. Moreover, it is common knowledge that putting out fires is a dangerous activity and that a person well might be injured in the process. The injuries in *Piccard,* therefore, were anything but a surprise because it is reasonably foreseeable that someone might get hurt attempting to fight a fire in a burning building. Nevertheless, we held that the injuries at issue in *Piccard* were not expected by the insured.

That conclusion would be appropriate in this case as well. *Piccard* teaches us that simply because a person's actions are foolhardy, potentially dangerous, or even criminal, does not mean that personal injuries are necessarily an expected result of those actions. It is certainly foreseeable that someone might get hurt as the result of a drunken man firing a shotgun at a car in a residential neighborhood, just as it was foreseeable that someone might be injured fighting the fire in *Piccard.* But it is not a highly likely result, one that might reasonably be expected to ensue from these actions most of the time.

Justice Boyle stresses the egregiousness of the acts in question, and I sympathize with the desire to exclude acts of this type from insurance coverage. In an ideal world, the language in McKay's insurance policy would not cover his activities outside Mr. Buczkowski's house. However, an insurance policy is a contract. It is a matter of agreement by the parties, and the job of the court is to interpret the terms of that agreement in accordance with the established rules of contract and insurance law. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Exclusionary policies

should be strictly construed in favor of the insured. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992). The terms of the policy here do not even hint at a reference to egregious activity. Thus, we must interpret the policy to cover even the most egregious acts if it is not highly likely that those acts would cause injury.

During its analysis of a case in which the acts of the insured were held to be excluded from coverage as a matter of law, Justice BOYLE states that, "[i]n essence, the court [concluded] that [the insured] should have known better." *Post* at 689. I would argue that this is precisely what Justice BOYLE would do in this case. She would conclude that this sort of activity is not something that insurance policies should cover, and she would transmogrify the objective standard from *Freeman* to fit that desire by taking into account the egregiousness of the insured's actions, rather than interpreting the policy at issue consistent with the actual language contained therein.

In summary, I think that application of the test outlined in *Freeman* is unrealistic. Shooting at a car with a shotgun in a residential neighborhood while drunk is both foolish and dangerous, but at least as often as not it probably will result only in a loud noise and some property damage. The actions at issue in this case were not highly likely to cause personal injury.

In order that there may be a majority for the disposition of this case, I join in the result only of the opinion of Chief Justice CAVANAGH.

LEVIN, J., concurred with BRICKLEY, J.

BOYLE, J. In this declaratory judgment action, defendant-appellant Allstate claims that home-

owner coverage of the insured, Anthony Buczkowski, is expressly excluded under the policy's "intentional acts exception." The exception in this policy provides that coverage is not provided for any bodily injury "which may reasonably be expected to result" from the insured's acts. The party injured by the insured's actions counters that the exception does not operate to bar coverage in this case, because the injury could not have been reasonably expected.

Applying the unambiguous, objective standard of expectation, the insured should be excepted from coverage, as a matter of law. The insured intentionally fired a shotgun, at night, in a residential neighborhood. The insured's actions were directed at an automobile parked beside a residence known to be occupied, and the insured took this action in a highly inebriated condition without any attempt to ascertain the presence of persons who would be put in danger by his actions. We find that the actions by the insured were of a sufficient nature to forewarn a reasonably prudent person that personal injury was highly likely to occur. We therefore would reverse the decision of the Court of Appeals and would reinstate the circuit court's grant of summary disposition in favor of the appellant insurer.

I

A

In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Allstate Ins Co v Freeman*, 432 Mich 656, 662; 443

NW2d 734 (1989). A motion for summary disposition may be granted only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10). The undisputed facts in this case are these:

The shooting incident occurred on June 23, 1984. On that day, but before the shooting, the insured, Walter McKay,[1] consumed a large quantity of alcohol, mostly beer. McKay had begun drinking the previous evening, and he admitted being intoxicated throughout the day of the shooting, including at the time of the incident.

Part of the afternoon of June 23 was spent by McKay attending a party with several friends at Kensington Park. At one point during the afternoon, McKay wandered away from the party, passed out, and was found and revived by his friends. This episode was a subject of argument between McKay and his girl friend, Terry Lemerand, on the way back to town from the party. The dispute was not resolved by the time Lemerand was dropped off at her home.

At some point later that evening, McKay saw Lemerand leaving her home with an acquaintance, Anthony Buczkowski.[2] Upon seeing Lemerand and Buczkowski together, McKay blocked Lemerand's driveway and commenced shouting angrily at both Lemerand and Buczkowski. After this encounter, McKay went to his home to retrieve his 20-gauge shotgun and bought some deer slugs and a knife at a K mart. McKay took this action with the admitted intent of shooting out the back window of the truck Buczkowski had driven to Lemerand's house.

---

[1] McKay is not a party to this appeal, but is the insured whose coverage is at issue in this case, and was a defendant in both the criminal and civil actions arising from the incident in question.

[2] As detailed below, Buczkowski is the person who was injured by McKay, and is the appellee in the present action.

Returning to the Lemerand home, McKay found Buczkowski's truck gone. McKay then consumed more liquor, this time rum, at the house of a friend across the street from Lemerand. At approximately 11:00 P.M., McKay was driven by another friend to Buczkowski's home, where he thought he saw the truck Buczkowski had been driving parked in the driveway. The vehicle, however, was a 1975 Mercury Marquis. Remaining inside his friend's car, McKay loaded his shotgun and fired a single slug with the intent of hitting the tailgate of the "truck." By doing so, McKay hoped the back window of the truck's bed cap would break out. Instead of hitting the back of the vehicle, the slug went through one of the car's tires, ricocheted and injured Buczkowski who, unbeknownst to McKay, was sitting at a picnic table in the yard behind his house.[3] Buczkowski's injuries necessitated amputation of his right ring finger and surgical fusion of his left wrist.

Shortly after the shooting incident, McKay passed out in his friend's car. After finding out about Buczkowski's injuries, and that police were searching for him, McKay turned himself in to authorities.

### B

McKay was criminally prosecuted for his actions and convicted of careless use of a firearm[4] and carrying a concealed weapon.[5] In addition to the criminal charges, Buczkowski commenced a tort

[3] According to a diagram of the scene of the incident submitted by Buczkowski to the circuit court as an exhibit, the picnic table where Buczkowski was seated was in a direct line behind the car McKay shot at. Buczkowski's car was parked in his driveway, in a space between the house and garage.

[4] MCL 752.861; MSA 28.436(21).

[5] MCL 28.422; MSA 28.92.

action against various parties, including McKay, McKay's mother Irene McKay, and K mart Corporation, alleging negligent acts by each party resulting in Buczkowski's injuries.

Irene McKay is a named insured under a homeowners policy issued by the present appellant, Allstate Insurance Company. McKay is also insured under this policy. Allstate accepted defense of the McKays in the tort action, but reserved its right of indemnity.

A jury awarded Buczkowski $1.5 million in his negligence suit, finding McKay and K mart jointly and severally liable.[6] The liability of each defendant was affirmed by the Court of Appeals. Unpublished opinion per curiam, issued July 23, 1990 (Docket No. 113888). Pursuant to further appeal, however, judgment against K mart was reversed by this Court, which found that K mart had no legal duty to protect Buczkowski from the criminal acts of McKay. 441 Mich 96; 490 NW2d 330 (1992).

During the pendency of the tort action, Allstate instituted a declaratory judgment action in federal court to determine its duty to indemnify McKay. After a subsequent state declaratory action[7] was commenced by Buczkowski, the federal complaint was dismissed. Both Allstate and Buczkowski filed motions for summary disposition in the state action. The circuit court granted summary disposition in favor of Allstate.[8]

---

[6] Before judgment, Irene McKay was dismissed as a defendant.

[7] MCR 2.605.

[8] In ruling on the cross-motions, the circuit judge concluded:

It does appear patently clear to this Court that Buczkowski's injuries could reasonably have been expected to result from McKay's intentional act of shooting a gun in the area of Buczkowski's home. Even if McKay did not intend to injure or even hit Buczkowski, Buczkowski's injuries were nevertheless the natural, foreseeable, expected and anticipatory result of

On appeal, the Court of Appeals first affirmed the decision of the lower court, 193 Mich App 673; 484 NW2d 766 (1992), but on rehearing reversed its earlier decision and, consequently, that of the circuit court. 198 Mich App 276; 502 NW2d 343 (1993). In the latter case, the Court found that whether Buczkowski's injury might reasonably have been expected to result from McKay's act, and thus trigger the intentional acts exception in the insurance policy, was a question of fact for the jury. *Id.* at 280-281.

After first denying Allstate's application for leave to appeal, 444 Mich 863 (1993), this Court granted appellant's petition, 445 Mich 861 (1994).

II

A

The Court of Appeals found that an issue of material fact remained to be resolved; however, we find that no factual dispute remains for purposes of this motion, and that our task is simply to apply the law to those facts.

The basic responsibility is interpreting the insurance contract between the parties. As we said in *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992):

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Accordingly, the court must look

McKay's act of intentionally firing a gun in the area of one's home when he could not see whether or not Buczkowski was in the area. [Unpublished decision of the circuit court, decided May 2, 1989 (Docket No. 86-628558-CK).]

at the contract as a whole and give meaning to all terms. *Fresard v Michigan Millers Mutual Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982). Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 361-362; 314 NW2d 440 (1982). This Court cannot create ambiguity where none exists. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375 Mich 598, 602; 134 NW2d 746 (1965).

Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Shelby Mutual Ins Co v United States Fire Ins Co,* 12 Mich App 145, 149; 162 NW2d 676 (1968). However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard, supra* at 695. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. *Kaczmarck v La Perriere,* 337 Mich 500, 506; 60 NW2d 327 (1953).

Where an insurer's duty to an insured is in question, we normally construe insurance contracts by way of a two-part analysis. First, we determine if the policy provides coverage to the insured. If it does, we then ascertain whether that coverage is negated by an exclusion. *Freeman, supra* at 668. In the present case, initial coverage is not challenged,[9] but Allstate alleges that coverage was lost under the exclusion for intentional and criminal acts.

The intentional acts exception at issue states:

> We do not cover any bodily injury or property damage which may reasonably be expected to

---

[9] The homeowners policy provides in "Part 1—Coverage K, Family Liability Protection, Losses We Cover: We [Allstate] will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy."

result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

We interpreted exactly this same exclusionary language in *Freeman, supra* at 686, to be clear and unambiguous. We are thus not faced with the task of interpreting ambiguous policy language, which must be construed in favor of the insured, *Powers v DAIIE,* 427 Mich 602, 604; 398 NW2d 411 (1986), but must instead "accept as the agreement of the parties the plain meaning of the words used." *Stine v Continental Casualty Co,* 419 Mich 89, 114; 349 NW2d 127 (1984).

B

The insurance policy's exclusionary clause includes both an objective and a subjective component. Exclusion of coverage for injuries "in fact intended by an insured person" requires a subjective determination whether the insured intended the injuries sustained. *Freeman, supra* at 688. Neither party asserts that this latter portion of the clause excepts McKay from coverage. In construing the facts in a light most favorable to Buczkowski, we accept McKay's statement that he intended no personal injury to Buczkowski as true.

The objective portion of the intentional acts exception, the one at issue in this case, requires a two-pronged inquiry:

1) Did the insured act either intentionally or criminally, and

2) Did the resulting injuries occur as the natural, foreseeable, expected, and anticipated result of the insured's intentional or criminal act? *Freeman, supra* at 686-688.

Plaintiff admits that McKay's actions were intentional. Those actions were also criminal. Plaintiff, however, alleges that the result of McKay's actions did not fully satisfy the second prong of the test from *Freeman.* While the personal injuries resulting from McKay's intentional shooting may have been the natural and foreseeable consequences of the act, plaintiff alleges that those injuries were neither expected nor anticipated. Thus, plaintiff claims, the exclusion does not bar McKay from coverage. We reject plaintiff's understanding of the inquiry under *Freeman* as requiring a subjective anticipation by the insured of the results that occur. The *Freeman* analysis is wholly objective.

C

*Freeman* determined that the portion of the intentional acts exception excluding coverage for damage that "may reasonably be expected to result" from an insured's acts requires an objective analysis of expectation. The exclusion does not ask what the insured expected or anticipated from his act, but what may "reasonably" be expected from the insured's intentional and criminal activity.[10]

In explaining the proper expectation inquiry under the objective test, Justice RILEY stated that the expected injury analysis in the companion case of *Metropolitan Property & Liability Ins v DiCicco* was "equally applicable" to the objective exclusion-

---

[10] [U]nder the Allstate exclusion, "reasonably be" immediately preceding "expected," in addition to the omission of "from the standpoint of the insured," requires application of an *objective* test of expectation. [*Freeman, supra* at 688 (opinion of RILEY, J.). Emphasis in original.]

ary clause in *Freeman. Freeman, supra* at 687.[11]
That analysis is embodied in the second prong of
the *Freeman* test. In developing the requisite mode
of evaluation to determine if an injury is the
"natural, foreseeable, expected, and anticipated
result of an insured's intentional act," Justice
RILEY explained that "[i]n this respect, we agree
with those courts which have held that '[f]or the
purposes of an exclusionary clause in an insurance
policy the word "expected" denotes that the actor
knew or should have known that there was a
substantial probability that certain consequences
will result from his actions.'" *Freeman, supra* at
675 (quoting *City of Carter Lake v Aetna Casualty
& Surety Co,* 604 F2d 1052, 1058-1059 [CA 8,
1979]).[12] Further clarifying the inquiry, Justice
RILEY also approvingly quoted from *Carter Lake* to
define "substantial probability" as requiring that
" 'indications [of a particular result, i.e., personal
injury] must be strong enough to alert a reason-
ably prudent man not only to the possibility of the
results occurring but the indications also must be
sufficient to forewarn him that the results are
highly likely to occur.'" *Freeman, supra* at 675
(citation omitted).

Guided by this analysis, we interpret the expec-
tation prong of the *Freeman* objective test to
require a determination whether the insured's
actions were of a sufficient nature to forewarn a

[11] While Justice RILEY's analysis of the exclusionary clause in
*DiCicco,* which differed from that in the present case, was not adopted
by the majority of the Court, her analysis of the objective clause in
*Freeman,* including incorporation of the expectation definition from
*DiCicco,* was agreed to by a majority.

[12] While discussion of expectation in *Carter Lake* was concerned
with determining if damage had resulted from an "accident," and
thus brought the incident within the terms of a comprehensive
general liability policy, this analysis is equally beneficial to determine
whether an injury that arguably falls under a policy's coverage may
be denied under the terms of an exclusionary clause.

reasonably prudent person that the resulting injuries from those actions were highly likely to occur. Assuming that the insured's actions were criminal or intentional, satisfaction of the expectation prong will result in exclusion from coverage. In the context of the present case, the question is whether McKay's action would have forewarned a reasonably prudent person that a personal injury was highly likely to occur.

### D

#### 1

In applying the objective clause analysis in *Freeman,* we looked to the relevant factors surrounding the incident in question and concluded that the coverage was excluded by the exception. The insured had an argument with a neighbor, after which she retrieved a loaded handgun from her home, reappeared outside and fired the gun in the direction of her neighbor without warning. The shot struck and injured the neighbor. From these facts, we agreed with the Court of Appeals that " ' "some acts . . . 'are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law.' " ' " *Freeman, supra* at 688 (citations omitted).

Similarly, in *Barton v Allstate Ins Co,* 527 So 2d 524 (La App, 1988), cited in *Freeman,* the Louisiana court, applying the same objective exclusionary clause as in *Freeman* and the present case, agreed with a jury verdict finding that where a man went to his estranged wife's home and fired a revolver through her bathroom door, knowing that another man was hiding in the bathroom, "it was substantially certain that the person behind the door would be injured," *id.* at 526; see also *Allstate Ins Co v Maloney,* 174 Mich App 263; 435 NW2d

448 (1988) (injuries were reasonably expected where the insured discharged a firearm in a house, in the vicinity of the injured parties).

2

It can be argued that *Freeman, Barton,* and *Maloney* are distinguishable from the present situation because in each of those cases the injured parties were known by the insured to be present at the time of his actions. Our research has not revealed cases interpreting an objective exclusionary clause in the context of a factual situation in which the insured did not know that the parties who were injured were nearby.

We find guidance in considering this factual distinction from insurance cases applying other exclusionary clauses in which the presence of the injured party was unknown to the party causing the harm. These cases address more subjective exclusionary language, and are thus concerned with an inference of intent. However, because intent would usually subsume expectation, their analysis of inferred intent is helpful to determine if certain acts "are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law."

The only case this Court has considered in which the presence of the party injured by his acts was unknown to an insured committing an intentional act is *Frankenmuth Mutual Ins Co v Piccard,* 440 Mich 539; 489 NW2d 422 (1992). In that case we considered whether the insured was covered under the terms of a commercial liability policy for bodily injuries sustained by a firefighter who, while working to control a fire intentionally caused by the insured, stepped off the roof of an adjacent building and fell to the ground. Among

the issues considered was whether the bodily injury of the firefighter was "expected [or] intended from the standpoint of the insured." *Id.* at 547. The standard applied by the lead opinion in *Piccard*[13] was not purely subjective, but rather a "policy-blended subjective standard" that allowed not only a determination of actual, subjective intent or expectation on the part of the insured, but also whether intent could be objectively inferred from the facts of the case.[14] Because of the remote causal connection between the insured's intentional act of setting the fire and the subsequent injury to the firefighter in battling the blaze, the justices joining the lead opinion could not say, as a matter of law, that coverage was precluded. "[B]ecause [the firefighter's] injury cannot be presumed to have occurred as a direct result of [the insured's] intentional act, coverage is not precluded." *Id.* at 553.

In *Auto-Owners Ins Co v Smith,* 376 NW2d 506, 508 (Minn App, 1985), coverage was denied as a matter of law under an exclusionary clause of a homeowners policy that denied coverage for "bodily injury or property damage expected or intended by an insured person." This clause is also narrower, and more subjective, than the objective

---

[13] There was no majority support for the rationale applied by the lead opinion in *Piccard.* Dispute was not, however, over the propriety of considering the causal connection between the insured's act and the firefighter's injury in examining the expectation issue. Disagreement in *Piccard* arose over the appropriate time in the chain of events that resulted in injury for a determination whether the injuries were the result of an accident. *Id.* at 555-559 (CAVANAGH, C.J., dissenting). As we have explained, we are not presented here with this threshold question whether coverage exists apart from the policy's exclusion.

[14] Inference of intent or expectation may be proper where (1) some harm was intended or expected by the tortfeasor, even though different in character or magnitude from that which actually occurred, or (2) the tortfeasor engaged in an intentional act, "the result of which injury can only occur." *Freeman, supra* at 719 (opinion of BOYLE, J.).

exclusion we are presently examining. In *Smith,* the insured fired four shots from a handgun into the darkened lower level of a house, with the avowed intent only to frighten one of the residents. *Id.* at 507. One shot, however, struck and killed a person sleeping in the lower level of the home. Accepting that the insured had no actual intent to injure anyone by his actions, id. at 509, the court held that the exclusionary clause applied as a matter of law, finding that intentionally shooting into a house known to be occupied was an act so egregious as to require an inference of an intent to cause personal injury. *Id.* at 510. In essence, the court agreed with the insured that he should have known better.

Finally, in *Petersen v Croft,* 447 NW2d 903 (Minn App, 1989), four intoxicated individuals in an uninsured vehicle shot four rounds from a rifle at the darkened home of the insured and her husband. The insured was struck and killed. The tortfeasors had no knowledge of the presence of the deceased, or any intent to injure; however, they did know the home was not vacant. *Id.* at 904. The insured's husband, as trustee, sought uninsured motorist benefits under automobile liability insurance policies that provided, in relevant part, that the insurer "will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle [which] must be caused by accident . . . ." *Id.* at 905. In determining if the occurrence was an accident, the critical question was whether the injuries were intended. Viewing the occurrence from the perspective of the tortfeasors, the court concluded that no accident had occurred, and thus there was no coverage, because the character of the act was such that an intent to inflict injury could be inferred as a matter of law.

3

From the uncontroverted facts in the present case, we must decide if Walter McKay's actions were of such a nature as to forewarn a reasonably prudent person that personal injury was highly likely to occur. From the cases examined, we glean .a nonexhaustive list of interrelated guiding principles, none of which are dispositive.

In all the cases discussed above, the court looked at the totality of the facts to determine if the exclusionary clause barred coverage. Particularly in *Freeman* and *Barton,* in which an objective exclusionary clause was at issue, the courts examined the factual context of the injury-causing incident to determine if personal injury was highly likely to have occurred. In *Freeman, supra* at 686-687, we found that where the insured intentionally fired a handgun in the direction of the injured party from a distance of only three to six feet, personal injury could reasonably have been expected. Although the court in *Barton, supra,* was reviewing a jury verdict, it found that when the insured fired a handgun at a closed bathroom door, when he knew that someone was on the other side, "[h]e should have been well aware that by firing the gun into the door, it was substantially certain that the person behind the door would be injured." *Id.* at 526.

In order to infer an insured's intent or expectation of injury from his intentional acts as a matter of law, the insured need not intend or expect the precise injury sustained or be aware of the presence of those persons in danger. That some personal injury was highly likely to occur is sufficient. In both *Smith* and *Petersen, supra,* the tortfeasors had no intent to cause personal injury or any knowledge of the presence of the injured parties.

In both cases, however, even under a subjective exclusionary clause, it was found that intent and expectation could be inferred as a matter of law.

When engaging in an objective-type analysis of an insured's intent or expectation to injure, it may be useful to consider the causal connection between the insured's act and the injury. In *Frankenmuth, supra,* the lead opinion considered it relevant in finding that expectation could not be objectively inferred that the injury in question could not be presumed to have been the direct result of the insured's intentional act. *Id.* at 552-553.

Finally, we find it proper to consider the egregious character of the insured's act in determining if personal injury could reasonably be expected. It is proper in such circumstances for a court to ask if the insured's act is one that society condemns, and if so, why. In both *Smith* and *Petersen, supra,* the Minnesota court found that the act of firing into a house known to be occupied, even when the shots were fired into the darkened, and presumably unoccupied, portion of the homes, presented such a danger of personal injury that intent should be inferred as a matter of law.

E

Applying these principles to the facts of this case, we find that McKay's acts were of such a nature as to forewarn a reasonably prudent person that personal injury was highly likely to occur. We thus would hold, as a matter of law, that McKay was excluded from coverage under Allstate's homeowners policy under the objective, intentional acts exception.

Looking at the totality of the circumstances, we find several factors that heightened the already dangerous character of McKay's intentional act.

McKay was admittedly drunk, passing out shortly after the incident for the second time that day. His ability to successfully aim his shotgun was thus significantly impaired. The random danger inherent in McKay's act is evinced by his testimony that he meant to aim at the tailgate of a truck, but ended up hitting the tire of the car that was actually in the drive. In addition, the shooting took place in a residential area, and was directed at a vehicle parked close to a home that was known by McKay to be occupied. The only distinction between these circumstances and the facts in *Smith* and *Petersen,* where shots were fired into a presumably unoccupied portion of a house, was that McKay's shot ricocheted off the tire or ground and then struck Buczkowski. We find this distinction to be immaterial. The shooting in the present case also occurred at night, in the dark, and there was no indication that McKay attempted to determine if any persons were placed in potential danger by his actions. All these factors heightened the danger of personal injury from McKay's intentional act.

That there was no expectation that Buczkowski, or any person, was going to be injured is not relevant. The pertinent inquiry is whether a reasonable person would find it highly likely that someone was going to be injured. Such injury is highly likely where one is firing a weapon in a residential area, where a number of persons are known to live.

McKay's shot was the direct cause of Buczkowski's injury. No intervening events, whether foreseeable or not, were necessary to cause Buczkowski's injury. This distinguishes the present case from *Piccard.* Unlike *Piccard,* in which the injury was not caused by the fire intentionally set by the

insured, but by a fall in trying to put out that blaze, in the present case, the slug intentionally fired by McKay caused Buczkowski's injury.

McKay's conduct in this case was egregious, and was an intentional act for which McKay was criminally liable. One of the principle reasons such careless, reckless, or negligent action is proscribed is concern over the safety of others. The legitimacy of this concern is illustrated by the injuries sustained in the present case.[15] If McKay had killed Buczkowski by his intentional actions, rather than inflicting crippling injuries, McKay could be found culpable for that death. MCL 750.321; MSA 28.553. Even if McKay only committed a misdemeanor, the criminal law finds injury from such intentional acts foreseeable enough that McKay could have been charged with manslaughter in that circumstance.

"Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." [*People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923). Citation omitted.]

See also *People v Austin,* 221 Mich 635, 644-645; 192 NW 590 (1923) (an instruction on involuntary manslaughter was required where there was evi-

---

[15] Justice BRICKLEY's approach would allow anyone to drive throughout any neighborhood in this state, randomly and repeatedly discharging a firearm at cars parked beside the homes in those neighborhoods and expect, under the terms of the policy at issue in the present case, insurance coverage for any personal injury caused. *Ante* at 674. We find it remarkable to assert that the parties contracted for such coverage, and decline to subscribe to such a peculiar "common sense" gloss on insurance contract analysis.

dence of a lack of felonious intent in the commission of an intentional act).[16]

### III

From the analysis above, we would hold that Allstate is entitled to summary disposition of the plaintiff's declaratory judgment action. There is no genuine issue of materiai fact remaining, and we find that, as a matter of law, McKay is excluded from coverage by the Allstate homeowners policy under the policy's intentional acts exception. Applying the objective standard of expectation embodied in that exception, we find that a reasonable person would find it highly likely that McKay's intentional act would result in personal injury to another.

We would reverse the decision of the Court of Appeals and would reinstate the trial court's grant of summary disposition in favor of the defendant-appellant.

GRIFFIN and RILEY, JJ., concurred with BOYLE, J.

[16] That McKay was initially charged with, but not convicted of, intent to commit murder does not alter this analysis.

Where the misdemeanor manslaughter doctrine applies, involuntary manslaughter liability attaches even where the defendant does not act with the degree of recklessness ordinarily required for involuntary manslaughter predicated on criminally negligent behavior. In effect, the defendant's intentional commission of a misdemeanor supplies the culpability required to impose homicide liability. [*Comber v United States,* 584 A2d 26 (DC App, 1990).]